Lillian CORDER; Roberta Lombardo, Plaintiffs–Appellees,

v.

Roy BROWN, Defendant–Appellant.

No. 92–56271.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1994.

Submission Withdrawn May 3, 1994.

Resubmitted May 27, 1994.

Decided June 2, 1994.

---

Timothy T. Coates, Greines, Martin, Stein & Richland, Beverly Hills, CA, for the defendant-appellant.

Stephen Yagman, Yagman & Yagman, Venice, CA, for the plaintiffs-appellees.

Before: HUG, WIGGINS, and NOONAN, Circuit Judges.

Opinion by Judge WIGGINS.

WIGGINS, Circuit Judge:

The district court awarded plaintiffs-appellees $90,333 in attorney's fees after they prevailed in a 42 U.S.C. § 1983 action. *Corder v. Gates,* 688 F.Supp. 1418 (C.D.Cal. 1988). Both parties appealed. The Ninth Circuit reversed and remanded. *Corder v. Gates (Corder I),* 947 F.2d 374 (9th Cir.1991). On remand, the district court awarded plaintiffs-appellees $240,695 in attorney's fees and denied defendant-appellant's request for an offset. Defendant-appellant appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We remand in part, and reverse and remand in part.

## I.

The underlying lawsuit was brought by two elderly women against 41 individual law enforcement officers, two counties and two cities for violating their civil rights, pursuant to 42 U.S.C. § 1983. Specifically, plaintiffs alleged that at 3:00 a.m. on January 18, 1985, defendants improperly entered and searched plaintiffs' residence, detained plaintiffs for five hours, tear gassed the residence and shot out a ceiling. Defendant-appellant Roy Brown, then the commander of the Los Angeles County Sheriff's Department SWAT Team, authorized the entry of plaintiffs' residence. Defendants were searching for an escaped prisoner for whom they held a commitment order. Although it is undisputed that defendants had probable cause to believe that the escaped prisoner was in the residence, defendants did not attempt to obtain a valid search warrant. Instead, defendants entered on the basis of the commitment order. Plaintiffs sought $1,000,000 in

compensatory damages and $1,000,000 in punitive damages against each defendant.

On September 30, 1985, defendants offered plaintiffs $45,000 to settle. The settlement offer provided $6,000 in damages and $39,000 for attorney's fees which had accrued at that point. Plaintiff Lombardo accepted the offer, but plaintiff Corder rejected it.[1]

Several defendants moved for and were granted summary judgment. At trial, plaintiffs achieved limited success against the remaining defendants, prevailing over only three law enforcement officers and recovering only minimal dollar amounts. Specifically, the jury awarded plaintiffs $2 in compensatory damages and $7,500 in punitive damages against one defendant; $2 in compensatory damages and $15,000 in punitive damages against a second defendant; and $2 in compensatory damages and $1,500 in punitive damages against defendant-appellant. Total compensatory and punitive damages amounted to $24,006. The other defendants were found to be shielded from liability by qualified immunity.

Plaintiffs then moved for attorney's fees under 42 U.S.C. § 1988.[2] The district court awarded plaintiffs $90,333 in attorney's fees. The district court found that the initial lodestar figure of $112,916 should be reduced by 20% to reflect plaintiffs' limited success in light of plaintiffs' rejection of the $45,000 settlement offer.

Two of the three defendants who were found liable settled with plaintiffs. Defendant-appellant appealed. He argued that the initial lodestar figure should have been reduced by more than 20%, given plaintiffs' very limited success. Defendant-appellant also argued that the district court should have offset the attorney's fee award by the amount already paid by the other two defendants through settlement. Defendant-appellant stressed that otherwise plaintiffs would receive an improper windfall. Plaintiffs cross-appealed. Plaintiffs argued that the

initial lodestar figure should not have been reduced at all, regardless of their limited success.

This court reversed the order of the district court. *Corder I,* 947 F.2d at 374. The court held that it was clearly erroneous for the district court to reduce the initial lodestar figure because plaintiffs had previously rejected the $45,000 settlement offer. *Id.* at 380–81. But, the court noted that it was not entirely clear that the district court had based the 20% reduction solely on plaintiffs' rejection of the settlement offer. Thus, the court remanded to the district court for clarification. *Id.* at 381.

This court also found that it was unable to determine whether the district court should have offset the attorney's fee award by the amount already paid by the other two defendants through settlement. The court stated, "We face a record that is entirely devoid of information about these alleged post-trial settlements; we have little information about either the number of settlements that have taken place, or the amount of these settlements." *Id.* at 383. Thus, the court remanded for further proceedings. *Id.*

On April 21, 1992, the district court conducted a hearing at which plaintiffs conceded that they had settled with the other two defendants who were found liable. But, plaintiffs noted that they deliberately did not allocate the settlement amounts between damages and attorney's fees because they wanted to avoid an offset by defendant-appellant. Furthermore, plaintiffs argued that they would not disclose the terms of the settlement agreements because the agreements were confidential.

The district court judge questioned whether she had authority to "pierce through a settlement agreement which was negotiated among the parties." She observed, "When there is a settlement and it is a negotiated settlement for a lump sum figure and there is

---

1. The district court later held that, because the offer was made to both of the plaintiffs, it had to be accepted by both of them. Thus, plaintiff Lombardo's acceptance of the offer was ineffective. *Corder v. Gates,* 688 F.Supp. at 1420.

2. Section 1988 provides in part, "In any action or proceeding to enforce a provision of ... [Section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

no allocation, why should the court get into the act? I[ ] just simply have to award attorney fees based upon reasonable attorney fees for the case."

On September 8, 1992, the district court entered a new order, awarding $240,695 in attorney's fees. First, the district court judge acknowledged that this court had rejected the sole factor upon which she had reduced the initial lodestar figure. But, instead of simply restoring the amount reduced and awarding plaintiffs interest on the judgment, the district court judge recalculated the entire award using the current hourly rate of plaintiffs' attorney in order to compensate for the delay in payment caused by the appeal. Next, she awarded plaintiffs attorney's fees for services rendered during the previous appeal and subsequent remand. Finally, the district court judge found that she was not required to reach the offset issue. First, there was no controlling authority mandating an offset. Second, defendant-appellant had not provided her with specific evidence that she could use to calculate the requested offset. She noted, "[Defendant-appellant] has presented no documentation which would indicate how much of the settlements should be allocated to fees, and thus how much should be offset from the amount owed by [defendant-appellant]."

On September 23, 1992, defendant-appellant filed a timely notice of appeal.

## II.

■ The district court's award of attorney's fees under 42 U.S.C. § 1988 is reviewed for an abuse of discretion. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Any elements of legal analysis which figure in the district court's decision are, however, subject to de novo review. *Hall v. Bolger,* 768 F.2d 1148, 1150 (9th Cir.1985).

## III.

### A. REDUCTION FOR LIMITED SUCCESS

Defendant-appellant contends that the district court abused its discretion in awarding plaintiffs full attorney's fees, given plaintiffs' very limited success. Defendant-appellant emphasizes that plaintiffs recovered only $24,006 out of the $1,000,000 they originally sought. Furthermore, only three defendants out of the 45 named in the complaint were found liable.

Defendant-appellant relies primarily on *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In *Farrar,* a plaintiff had sought $17 million in damages from six defendants, but was awarded only $1 in damages against.one defendant. Nonetheless, the district court awarded $280,000 in § 1988 attorney's fees. The Court reversed, holding that the plaintiff was not entitled to attorney's fees. *Id.* at ——, 113 S.Ct. at 575. The Court explained that the most critical factor in determining the reasonableness of an attorney's fee award is the degree of success the plaintiff achieved. *Id.* at ——, 113 S.Ct. at 574; *see Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943 ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988."). Having obtained only one-seventeen-millionth of what the plaintiff sought after ten years of litigation, which included two trips to the Court of Appeals, any award would be unreasonable. *Farrar,* —— U.S. at ——, 113 S.Ct. at 575; *id.* at 575 (O'Connor, J., concurring). Accordingly, defendant-appellant concludes that similarly, full attorney's fees would be unreasonable here, given that plaintiffs obtained only a small fraction of what they originally sought. *See also Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

■ We agree. We remand to provide the district court the opportunity to reconsider the issue in light of *Farrar* which was not yet decided when the district court issued its September 1992 order. The district court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *see LeMaire v. Maass,* 12 F.3d 1444 (9th Cir.1993) (holding that plaintiff's

reasonable attorney's fees "must be reduced to reflect the limited degree of his success"); *Jones v. Espy,* 10 F.3d 690 (9th Cir.1993) (affirming a district court's award that reduced the number of hours reasonably worked by 33% from 550 hours to 370 hours because plaintiffs achieved only limited success).

■ On remand, the district court must recalculate an attorney's fee award. The district court should give primary consideration to the following: (1) the amount of damages awarded as compared to the amount of damages sought is minimal, *Farrar,* —— U.S. at ——, 113 S.Ct. at 575; and (2) the number of defendants found liable as compared to the number of defendants sued is insignificant, *id.* at ——, 113 S.Ct. at 578 (O'Connor, J., concurring). *See LeMaire,* 12 F.3d at 1461 ("Because [plaintiff] prevailed on only a few issues, his reasonable attorney's fees must be reduced to reflect the limited degree of his success."); *Wilks v. Reyes,* 5 F.3d 412, 417 (9th Cir.), *amended* (9th Cir.1993).

■ Furthermore, the district court should articulate a clear explanation of its reasoning when it recalculates the attorney's fee award. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Corder I,* 947 F.2d at 380; *Chalmers v. Los Angeles,* 796 F.2d 1205, 1211 (9th Cir.1986), *amended,* 808 F.2d 1373 (9th Cir.1987); *Hall v. Bolger,* 768 F.2d at 1151. We note that the district court did not address the limited success issue at all, except to note that the Ninth Circuit had found it clearly erroneous to reduce the initial lodestar figure because plaintiffs achieved limited success in light of plaintiffs' rejection of the $45,000 settlement offer. The district court should have stated its reasons why a reduction based on other grounds was not warranted. *See, e.g., Rivera v. Riverside,* 763 F.2d 1580, 1582 (9th Cir.1985), *aff'd,* 477 U.S.

561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Masalosalo v. Stonewall Ins. Co.,* 718 F.2d 955, 957 (9th Cir.1983).

## B. RECALCULATE OR AWARD INTEREST

In December 1987, the district court found that plaintiffs' attorney had reasonably expended 579.2 hours litigating the case. Specifically, the district court determined that 245.7 hours were expended in 1985 at an hourly rate of $175 and 333.5 hours were expended in 1986 and 1987 at an hourly rate of $200. The district court added paralegal and photocopying costs of $3,218.75. Thus, the district court concluded that the full amount owed for services rendered through trial was $112,916.25. (After reducing this initial lodestar figure by 20%, the district court awarded $90,333.)

On remand, plaintiffs' attorney asserted that the district court should not simply restore the 20% reduction and award interest to compensate for the delay caused by the appeal. Plaintiffs' attorney argued that instead the district court should award all compensable hours at his current hourly rate of $350 per hour. The district court agreed, finding that the increased payment was justified because the case "began over seven years ago." Thus, the district court awarded all 577.7 hours at $350 per hour, concluding that the full amount owed for services rendered through trial was $202,195.[3]

In the course of recalculating the attorney's fee award, the district court awarded plaintiffs' attorney an additional $89,278.75 for his services rendered through trial. If the district court had instead awarded interest under 28 U.S.C. § 1961, it would have awarded only an additional $42,315 for his services rendered through trial.[4] Thus, by choosing to compensate for the delay by re-

**3.** As discussed above, the district court actually awarded $240,695 because it also awarded attorney's fees for services rendered during the appeal and subsequent remand. Specifically, the district court awarded $38,500 for these post-trial services.

**4.** The $42,315 interest award is determined as follows. Section 1961 provides for interest on a judgment in a civil case and sets forth the formula for calculating it. The interest rate is equivalent to the Treasury Bill rate effective at the auction held immediately prior to the judgment. The Treasury Bill rate effective at the November 20, 1987 Treasury Bill auction was 6.93%. *See* Vol. 282, No. 27769, *The Bond Buyer,* November 20, 1987. $112,916.25 at 6.93%, compounded annually, is $42,315.

calculating the award rather than by awarding interest, the district court granted $46,-963.75 more in additional attorney's fees.

Defendant-appellant contends that the district court abused its discretion by recalculating the lodestar figure. Defendant-appellant claims that a delay in payment occasioned by appeal is redressable solely by an award of interest. *See* 28 U.S.C. § 1961. In support of this proposition, defendant-appellant cites *Islamic Center of Miss., Inc. v. Starkville, Miss.*, 876 F.2d 465 (5th Cir.1989), and *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648 (3d Cir.1986), *vacated and remanded*, 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987). *Islamic Center* and *Black Grievance* held that the period following the fee determination is covered by post-judgment interest provided for in 28 U.S.C. § 1961. *Islamic Center*, 876 F.2d at 473; *Black Grievance*, 802 F.2d at 656; *see also Foley v. Lowell, Mass.*, 948 F.2d 10, 22 (1st Cir.1991) (same).

Defendant-appellant further argues that the holding of *Islamic Center* and *Black Grievance* is a logical clarification of current Ninth Circuit case law. The court has already held that a 42 U.S.C. § 1988 award is subject to 28 U.S.C. § 1961 interest. *Spain v. Mountanos*, 690 F.2d 742, 745 (9th Cir. 1982). Here, defendant-appellant contends, the court should hold that a Section 1988 award is subject *only* to 28 U.S.C. § 1961 interest.

Plaintiffs contend that use of the current hourly rate rather than historic hourly rates cannot be an abuse of discretion. The Supreme Court has expressly approved this method of upward adjustment. In *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the Court held:

> Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [Section 1988].

*Id.* at 283–84, 109 S.Ct. at 2469.

Defendant-appellant counters that *Jenkins* is distinguishable. Defendant-appellant argues that *Jenkins* applies only where a delay in payment is occasioned by lengthy trial litigation. For example, in *Jenkins*, the litigation began in 1977, but did not end until 1984. Thus, the district court determined the fee award seven years after services began. Here, however, the litigation began in January 1985 and was over in August 1987. Thus, the district court determined the fee award only two years after services began. Five of the seven years the district court judge referred to were spent contesting attorney's fees, not litigating substantive civil rights issues. Thus, defendant-appellant concludes, *Jenkins* should not apply.

■ This is an issue of first impression in the Ninth Circuit. Where litigation spans several years, a plaintiff's attorney does suffer significant costs due to the time value of money. When the district court formulates an attorney's fee award, the award will be a monetarily inaccurate assessment of attorney's fees incurred, if left uncorrected. But, where as here, the litigation was relatively short-lived, a plaintiffs' attorney does not suffer such costs. When the district court formulates an award, the award is monetarily accurate. The plaintiff's attorney only suffers costs due to the time value of money if the award is appealed and the appeal lasts several years. But, once an award is determined, it becomes a judgment. *See Spain*, 690 F.2d at 747–48. Because the award is a judgment, the judgment holder is entitled to interest. *See* 28 U.S.C. § 1961 (expressly providing for an award of interest on a judgment). Thus, the costs incurred by plaintiff's attorney due to the time value of money should be compensated through interest. Accordingly, we hold that a delay in payment occasioned by appeal is redressable *solely* by an award of interest. *See Islamic Center*, 876 F.2d at 473; *Black Grievance*, 802 F.2d

at 656;[5] *Foley*, 948 F.2d at 22.

Thus, although the determination of an attorney's fee award is primarily a matter of district court discretion, *see Blum v. Stenson*, 465 U.S. 886, 896–97, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984), we find that the district court abused its discretion in recalculating the lodestar figure using the current hourly rate of plaintiffs' attorney. The district court's use of the current hourly rate resulted in a significant windfall for plaintiffs' attorney. We reverse and remand to the district court to award Section 1961 interest.

## C. OFFSET

Defendant-appellant argues that the district court abused its discretion by not offsetting the attorney's fee award by the amount already paid in settlement by the other two defendants. Without an offset, plaintiffs will receive an improper windfall. We agree.

In support of his argument, defendant-appellant relies on *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101 (3d Cir.1981), and *Hoffman v. McNamara*, 688 F.Supp. 830 (D.Conn.1988). In *Miller*, the Third Circuit held that a defendant was entitled to an offset by the amount of damages paid by settling co-defendants in a 42 U.S.C. § 1988 action. The court stated, "We therefore hold that in federal civil rights cases, where one or more defendants have settled with a plaintiff, the damages recoverable by that plaintiff shall be reduced by the amount of the settlement received." *Id.* at 110. The court found this as a matter of federal common law. *Id.* at 107–08. It offered three reasons why federal common law, rather than state law, governs. "First, the rule of contribution is intimately bound up with the nature and extent of the substantive federal rights created by the civil rights acts." *Id.* at 108. "Second, contribution rules are not traditional matters of state rather than federal concern." *Id.* Finally, contribution rules are not solely a matter of legislative concern. "Federal courts have fashioned contribution rules in various fields." *Id.*

Similarly, in *Hoffman*, a district court found that a defendant was entitled to an offset by the amount of damages paid by settling co-defendants. *Hoffman*, 688 F.Supp. at 834. But, in *Hoffman*, the district court ruled that the issue was governed by state law. *Id.* at 832–34. The district court offered two reasons why federal common law was not applicable. First, state law should provide the rule of decision if federal law does not cover an issue. Here, federal law is silent on this issue of whether the amount of damages owed by a non-settling defendant should be offset by the amount of damages paid by a settling defendant. Therefore, the *Hoffman* court concluded, state law controls. *See Johnson v. Rogers*, 621 F.2d 300 (8th Cir.1980) (same). Second, subsequent to *Miller*, the Supreme Court held that there is no right to contribution in Title VII and Equal Pay Act actions. *See Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 90–99, 101 S.Ct. 1571, 1580–1584, 67 L.Ed.2d 750 (1981). Thus, the *Hoffman* court concluded, the Third Circuit's reasoning in *Miller* was undercut. *Hoffman*, 688 F.Supp. at 832–33. In addition, the district court explained why it relied on state law. "Connecticut has not ... endorsed the concept that a plaintiff is entitled to more than one satisfaction of his damages." *Id.* at 834.

Defendant-appellant further argues that *Miller* and *Hoffman* are not distinguishable because damages, and not attorney's fees, were at issue. In fact, defendant-appellant argues, a stronger case can be made that a non-settling defendant is entitled to an offset on an attorney's fee claim because a plaintiff's attorney is entitled only to a "reasonable" fee under 42 U.S.C. § 1988.

In addition to *Miller* and *Hoffman*, defendant-appellant uses common sense and sound public policy to support his argument. Defendant-appellant points out that if an offset is not allowed, plaintiff's attorney may possibly receive more attorney's fees than are owed. Given that Section 1988 was enacted to provide an attorney with a reasonable fee award, to hold in a manner that would allow an attorney to receive a windfall would be manifestly unreasonable.

**5.** We are aware that *Black Grievance* lacks precedential authority.

Next, defendant-appellant argues that the district court also abused its discretion by citing a lack of specific evidence upon which an offset could be calculated as a second ground for denying an offset. At a minimum, defendant-appellant asserts, the burden should have shifted to plaintiffs and the other two settling defendants to demonstrate why the settlement should not be used to offset the attorney's fees owed by defendant-appellant. *See U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1262 (10th Cir.1988).

In *U.S. Industries,* the plaintiffs sought to defeat an offset by the amount paid by a settling defendant. The plaintiffs argued that the settlement agreements were ambiguous as to what injuries and claims were covered. The district court disagreed and reduced the verdict. The Tenth Circuit affirmed, reasoning that the burden was properly shifted to the plaintiffs and settling defendant to disclose the terms of the agreement. *U.S. Industries,* 854 F.2d at 1262. The Tenth Circuit reasoned that because the non-settling defendant was not a party to the agreement, he had limited or non-existent access to the terms of the agreement. *Id.* Furthermore, the plaintiffs and settling defendant stood to benefit by the non-settling defendant's lack of participation in the agreement. *Id.* Similarly, defendant-appellant argues, the district court should have compelled disclosure of the terms of the settlement agreements once plaintiffs and settling defendants declined to disclose them at the April 21, 1992 hearing.

Plaintiffs contend that, as a matter of law, the district court could not have abused its discretion by denying an offset because there is no controlling Supreme Court or Ninth Circuit law requiring it to grant an offset.

■ This is also an issue of first impression in the Ninth Circuit. We must decide today whether a non-settling defendant is entitled to offset an attorney's fee award by the amount already paid by settling defendants. The district court denied defendant-appellant an offset precisely because there was no controlling authority requiring her to grant an offset. We hold here that a non-settling defendant is entitled to offset attor-

ney's fees owed by the amount already paid by settling defendants. Defendant-appellant has presented a persuasive argument, highlighting the unfairness and unreasonableness of denying an offset. We make this holding simply as a matter of statutory construction. As discussed above, a plaintiff's attorney is entitled only to a "reasonable" fee under 42 U.S.C. § 1988. If an offset is denied, the plaintiff's attorney may receive a windfall. A windfall would be manifestly unreasonable.

Thus, we reverse and remand to the district court. We have issued a separate order requiring plaintiffs' attorney to disclose the total amount he received from the settlement in attorney's fees. The district court is hereby instructed to deduct the amount of attorney's fees plaintiffs' attorney has already received from the settlement from the total amount of attorney's fees to be awarded.

## D. ATTORNEY'S FEES FOR PREVIOUS APPEAL

Defendant-appellant contends that the award of attorney's fees for services rendered in the previous appeal should be reversed. Plaintiffs are not yet a prevailing party with respect to the issues raised in the previous appeal. Specifically, both the limited success issue and the offset issue are now pending before this court. Defendant-appellant argues that if defendant-appellant obtains either a reduction or an offset, plaintiffs will have received no benefit from the previous appeal.

Plaintiffs argue that a party who ultimately prevails in a Section 1983 action is entitled to fees for all services rendered in all phases of litigation. Consequently, plaintiffs contend, defendant-appellant's contention that the district court abused its discretion by including in its fee determination compensation for services rendered on the first appeal is frivolous.

■ Thus, the issue before the court is whether the services rendered by plaintiffs' attorney during the previous appeal and subsequent remand represent compensable legal work. This issue is resolved by Ninth Circuit case law. If a party meets with total success on appeal, it is proper to award full

attorney's fees. If, however, a party meets with partial success on appeal, it is proper to award attorney's fees only for those claims successfully defended on the merits. *Larez v. Los Angeles,* 946 F.2d 630, 649 (9th Cir. 1991); *see Conner v. Santa Ana,* 897 F.2d 1487, 1494 (9th Cir.), *cert. denied,* 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990). Because the limited success issue and the offset issue have been remanded again, it is not yet known whether plaintiffs will prevail on these two issues. Accordingly, we reverse the district court's award of attorney's fees incurred during the previous appeal and subsequent remand.

If plaintiffs prevail on either or both issues on remand, then further fees would be proper to compensate for the fees incurred during both the previous appeal and subsequent remand. In addition, fees which have been incurred during this appeal will also be proper. "A plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1053 (9th Cir.1991).

### CONCLUSION

For the foregoing reasons, we remand to the district court to reconsider the limited success issue in light of *Farrar.* Furthermore, we reverse the district court's recalculation of the lodestar figure using the current hourly rate of plaintiffs' attorney, and remand to the district court with instructions to award interest instead under 28 U.S.C. § 1961. Moreover, we reverse the district court's denial of an offset, and remand to the district court with instructions to deduct the amount of attorney's fees plaintiff's attorney has already received from the settlement. Finally, we reverse the award of attorney's fees for services rendered during the previous appeal and subsequent remand because this issue cannot yet be decided.