Opinion by Judge HAWKINS; Concurrence by Judge REINHARDT.
OPINION
HAWKINS, Circuit Judge:
This appeal arises from a jury verdict that Defendants the City of Santa Maria (“City”) and Louis Tanore, Larry Ralston, and Danny Macagni of the Santa Maria Police Department (“SMPD”) violated the constitutional rights of Plaintiffs Javier Bravo, Sr., his wife Hope, and their granddaughter E.B. (collectively, “the Bravos”). Specifically, the jury found that SMPD officers failed to disclose in seeking a warrant to search the Bravos’ home that Javier Bravo, Jr. — suspected of hiding weapons that may have been used in a gang-related shooting incident — was not living and had not been living in the home for some seven months prior to the shooting because he was incarcerated in state prison on unrelated charges. The resulting pre-dawn, SWAT-style search of the Bravos’ residence did not yield any weapons, but succeeded in rousing the Bravos from their beds and frightening them. Prior to trial, the Bravos settled with the City of Santa Barbara, whose officers actually carried out the entry of the Bravo home, for $360,000. The case went to trial against the remaining defendants and resulted in a jury award of $5,000 in compensatory damages to Javier Sr. and nominal damages to Hope and E.B. In this opinion,[1] we address an issue of first impression: whether in considering an award of attorney fees under 42 U.S.C. § 1988, it is appropriate to take into consideration a plaintiffs success in obtaining a settlement against another party arising out of the same facts. For the reasons set forth below, we conclude that, under the facts and circumstances of this case, it was appropriate to take the Santa Barbara settlement into consideration and, accordingly, we affirm the district court’s fee award. On the same theory, we vacate the cost award against the Santa Maria defendants and remand for the district court to take into account the costs recovered in the Santa Barbara settlement and offset those costs against the *663 costs to be awarded against the Santa Maria defendants.
BACKGROUND
I. Facts
A. Shooting Incident and Investigation
While investigating an April 2006 gang-related shooting, SMPD detectives Louis Tanore and Eligió Lara learned that Javier Bravo, Jr. and about a dozen others might have been involved in the shooting or might possess evidence of the crime (in particular, the weapons used).
Tanore directed Lara to gather information on eight of these individuals, including checking into their criminal histories and custody status. According to Lara’s testimony, he called the Santa Barbara county jail to determine the custody status of the eight targets. Lara learned from these calls that one of the eight — James Franklin — had been transferred from county custody to state prison. He disclosed this finding to Tanore, and Franklin was removed from the list of targets. According to a county jail official’s trial testimony, Lara asked whether Javier Jr. was in county custody (he was not), but he did not ask follow-up questions about whether, like Franklin, Javier Jr. had been transferred from county to state custody. Lara never learned this.
B. Custody Check Procedure
To determine a target’s custody status, SMPD officers’ practice was to call the Santa Barbara county jail. County jail officials can determine whether a target is in county custody, as well as whether he has been released or transferred to state custody. Determining whether a target is in county custody and determining whether he has been transferred to state custody requires two different computer searches.
Lara and Larry Ralston, the lead supervisor of the investigation, testified that if an SMPD officer learned that a target had been transferred to state custody, he or she would then follow up with state authorities. Tanore testified that SMPD practice was to call the Santa Barbara county substation regardless of whether a person was potentially in county or state custody; he did not mention any follow-up procedure.
C. Warrant Affidavit
Based in part on information gathered by Lara, Tanore prepared an affidavit in support of nighttime warrants to search the homes of Javier Jr. and six other suspected gang members. The affidavit included criminal history information on each target, including Javier Jr., which Tanore obtained by reviewing rap sheets provided by Lara. The affidavit stated that Javier Jr. had been arrested or charged numerous times in the past and included possession of known stolen property as one of the crimes for which he had been arrested or charged. However, the affidavit did not include the dates of the offenses. Nor did it disclose that Javier Jr. had been sentenced to two years in state prison in September 2005 — about seven months pri- or to the shooting incident — for the stolen property offense, or that he might still be incarcerated.
D. Search
The magistrate judge approved a warrant for a nighttime search. Because SMPD lacked the resources to conduct seven simultaneous home searches, its officers invited the Santa Barbara Sheriffs Office (a county agency) and Santa Barbara Police Department (a city agency) to conduct some of the searches. Tanore informed the partner agencies of the risks and dangers of the search. Though nei *664 ther Tanore nor anyone else from SMPD prescribed the partner agencies’ tactics, Tanore stated that he was not surprised that they elected to use a SWAT team.
At 5:26 a.m. on April 26, 2006, a Santa Barbara Police Department SWAT team knocked on the front door of the Bravos’ residence, announced their presence, and three seconds later shot off the locks and broke down the door. Simultaneously, the team deployed two “flashbang” grenades outside of the back door.
Javier Sr., Hope, and E.B. (eight years old at the time) were awakened by these loud noises and frightened to see armed individuals in their home. Javier Sr. initially believed that robbers were invading the house or that his son had escaped from jail and been shot at his doorstep, causing him to experience heart-attack-like symptoms. All three plaintiffs testified that they were not touched during the search. Hope and E.B. were told to lie on the floor in the bathroom, where they had gone to hide upon hearing the loud noises. After securing the residence, the City of Santa Barbara officers turned the scene over to SMPD to search the house.
At some point during the search, Hope informed the officers that Javier Jr. was in prison and showed them a letter she had recently received from him. As Tanore was off-site, an officer at the scene called to inform him that Javier Jr. was in custody, at which time Tanore instructed the officer to continue with a “cursory” search of the residence. SMPD seized a number of items from the home, but found no weapons.
II. Procedural History
A. Complaint, Pretrial Motions, and Prior Appeal
In October 2006, the Bravos brought suit against Tanore, his supervisor Ral-ston, SMPD Chief of Police Danny Macag-ni, and the City of Santa Maria, as well as the counties of San Luis Obispo and Santa Barbara, their sheriffs offices and county sheriffs, and the cities of San Luis Obispo and Santa Barbara and their police chiefs. The Bravos alleged violations of the Fourth and Fourteenth Amendments (due process and equal protection) and various state laws, and requested unspecified amounts of general, special, and punitive damages, a $25,000 civil penalty, and recovery of related costs.
Plaintiffs stipulated to dismiss their claims against the County of San Luis Obispo and City of San Luis Obispo defendants early in the case. They settled with the City of Santa Barbara defendants for $360,000 after the City of Santa Barbara defendants appealed the district court’s denial of qualified immunity. The settlement amount consisted of $50,000 in damages for each plaintiff, $169,856.34 in attorney fees, and $16,208.95 in costs.
The district court then granted summary judgment for the County of Santa Barbara and the Santa Maria defendants. The Bravos appealed. In that appeal, we affirmed the grant of summary judgment for the County of Santa Barbara defendants, but reversed the grant of summary judgment in favor of the Santa Maria defendants. Bravo v. City of Santa Maria, 665 F.3d 1076, 1091 (9th Cir.2011). We rejected the district court’s finding that the omission of Javier Jr.’s custody status was immaterial, concluding that if “Javier Jr.’s two-year sentence imposed over six months prior to the incident occasioning the search warrant” and his incarceration at- the time of the shooting were included, the affidavit “could not establish probable cause for the search and especially does not meet the heightened standard of justification required for nighttime SWAT service.” Id. at 1084. Javier Jr.’s custody *665 status “meant not only that he would not be present in the Bravo residence at the time of the search, but that he could not have been involved in the shooting or in concealing the evidence.” Id.
We also rejected the conclusion that Ta-nore was “negligent at most” in omitting Javier Jr.’s custody status, concluding that the Bravos “presented sufficient evidence establishing a genuine issue as to whether [Tanore’s] omission of [Javier Jr.’s sentence and custody information from the affidavit] was intentional or reckless, as opposed to merely negligent____” Id. at 1080.
B. Jury Verdict and Post-Trial Judgment
On remand, after five days of hearing evidence and four days of deliberation, the jury returned a special verdict finding all Santa Maria defendants liable. The jury awarded $5,000 in compensatory damages to Javier Sr. and $0 to Hope and E.B. It did not award punitive damages. The district court entered judgment, awarding $5,000 to Javier Sr. and $1 each to Hope and E.B.
After judgment was entered, Defendants renewed their motion for judgment as a matter of law, attacking the findings of liability against Tanore, Ralston, Macagni, and the City. Defendants also moved to amend the judgment, contending that damages, attorney fees, and costs should be offset by the Bravos’ $360,000 settlement with the City of Santa Barbara. The Bravos moved for a new trial on damages, and requested an award of attorney fees and costs.
The district court granted the Defendants’ motion for judgment as a matter of law as to Police Chief Maeagni’s individual liability, but denied the motion as to Ta-nore, Ralston, and the City. Regarding Defendants’ motion to amend the judgment, the court concluded that any award of attorney fees should be offset by the attorney fees portion of the City of Santa Barbara’s settlement ($169,856.34) but that any award of costs should not be offset by the costs already paid in the City of Santa Barbara settlement ($16,208.95). Finally, the court denied the Bravos’ motion for a new trial on damages, but named the Bravos the prevailing parties and awarded $1,023,610.41 in attorney fees and $13,376.85 in costs. The court then entered an amended judgment, which the parties timely cross-appealed.
JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction under 28 U.S.C. § 1291. Attorney fee and costs awards are reviewed for abuse of discretion. Disc Golf Ass’n, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1010 (9th Cir.1998); Corder v. Brown, 25 F.3d 833, 836 (9th Cir.1994).
ANALYSIS
In a contemporaneously filed Memorandum, we affirm the district court’s decisions to grant judgment as a matter of law to Defendant Macagni, to deny judgment as a matter of law to Defendants Tanore, Ralston, and the City, and to deny Plaintiffs’ motion for a new trial on damages. We’ address in this opinion only the district court’s decisions as to attorney fees and costs.
I. Attorney Fees
In a 42 U.S.C. § 1983 suit, “the court, in its discretion, may allow the prevailing party ... a reasonable attorney’s fee as part of the costs.” 42 U.S.C. § 1988(b). To determine the amount of a reasonable fee, district courts typically proceed in two steps: first, courts general *666 ly apply the lodestar method to determine what constitutes a reasonable attorney fee; and second, the district court may then adjust the lodestar upward or downward based on a variety of factors, including the degree of success obtained by the plaintiffs. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir.2013). The Supreme Court teaches that the degree of success obtained is “ ‘the most critical factor’ in determining the reasonableness of a fee award.” Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). “It is an abuse of discretion for the district court to award attorneys’ fees without considering the relationship between the ‘extent of success’ and the amount of the fee award.” McGinnis v. Ky. Fried Chicken, 51 F.3d 805, 810 (9th Cir.1994) (quoting Farrar, 506 U.S. at 116, 113 S.Ct. 566).
Here, it is undisputed that the Bravos are prevailing parties,[2] and Defendants do not contest the district court’s lodestar calculation. The sole issue before us is whether the district court erred in its analysis of the degree of Plaintiffs’ success. Defendants contend that the district court dramatically overvalued the degree of success. Since the Bravos won only $5,002 at trial, the question is whether this litigation generated some other benefit that would justify the district court’s finding that the Bravos achieved an excellent result and the consequent award of $1,023 million in attorney fees.
We identify two such benefits in the record. First, the district court properly noted that this litigation benefitted the public by identifying a serious flaw in SMPD’s method of checking individuals’ custody status before seeking warrants. In addition, this litigation led to our earlier Bravo decision, in which we held that greater justification is needed for a nighttime forced entry by a SWAT unit than for an ordinary search. 665 F.3d at 1085-86. This provides guidance to law enforcement officers and to magistrate judges considering the issuance of such warrants. See Gonzalez, 729 F.3d at 1210 (attorney fee award higher than the amount of damages won by plaintiff may be reasonable if the civil rights case “ ‘also conferred] benefits on others throughout society’ by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct” (quoting McGinnis, 51 F.3d at 810)).
 Second, the district court properly considered the Bravos’ $360,000 settlement with the City of Santa Barbara defendants, with $50,000 in damages for each plaintiff, as part of their success. Although we have previously held that, in certain situations, a non-settling defendant may be entitled to an offset of attorney fees paid by a settling defendant, Corder, 25 F.3d at 840, we have yet to articulate a rule regarding whether a district court may consider a co-defendant’s settlement payment in evaluating the reasonableness of an attorney fee award. We hold now that the district court may, within the exercise of its discretion, consider the damages portion of a settlement payment by other defendants in evaluating a plaintiffs degree of success. However, it should do so only if and to the extent that plaintiffs counsel’s time spent on settling defendants cannot be fairly separated from the time spent on. non-settling defendants. Factors to consider include whether the plaintiffs *667 claims against both sets of defendants “involve a common core of facts” or are “based on related legal theories,” cf. Hensley, 461 U.S. at 435, 103 S.Ct. 1933; if the claims are in fact divisible, whether that was apparent from the outset or whether the divisible nature became clear as the litigation developed and discovery progressed; and whether the claims against the settling defendants were, in the district court’s considered judgment, meritorious, or whether they were settled for nuisance value.[3]
Turning to the facts of this case, the district court appropriately found that the Bravos’ claims against the Santa Maria and the City of Santa Barbara defendants are factually' and legally intertwined. Plaintiffs’ theory of liability was that the Santa Maria defendants caused Santa Barbara to use a SWAT team to force entry into the Bravos’ home. Given that the district court decided as a matter of law that the no-knock entry violated the Fourth Amendment, it is clear that the claims against the City of Santa Barbara defendants were meritorious and not settled merely for nuisance value.
Accordingly, we affirm the attorney fee award.
II. Offsets of Costs
Defendants contend that the district court abused its discretion when it refused to offset its award of $13,376.85 in costs, by the $16,208.95 in costs paid by the City of Santa Barbara defendants. In refusing to offset costs, the district court held that costs are not akin to attorney fees, for which offsets are required, but rather “are more analogous to damages ..., and therefore require defendants to pay at least their proportional share.”
Whether an award of costs must be offset by costs paid by a settling co-defendant also appears to be an issue of first impression in this circuit. There is little case law directly on point.[4] Therefore, we reason from principle and analogy and hold that the Santa Maria defendants are entitled to an offset of costs to the extent that the litigation expenses have already been reimbursed.
Contrary to the district court’s holding, costs are not analogous to damages. They are not compensation for loss and, unlike the determination of damages, which is usually left for the jury, the calculation of costs is almost exclusively a function for a judge, see 10 Wright & Miller, Federal Practice and Procedure § 2665 (3d ed.1998). Costs are more analogous to attorney fees. Like attorney fees, costs are a reimbursement for “litigation-related expenses that a prevailing party is entitled to be awarded.” Taxation of Costs, Black’s Law Dictionary (10th ed.2014); cf. Fed.R.Civ.P. 54(d) (referring to “costs— other than attorney’s fees”); 10 Wright & Miller, Federal Practice and Procedure *668 § 2675 (3d ed.1998) (treating attorney fees as component of costs).
We held in Corder that a district court abuses its discretion when it refuses to offset an award of attorney fees by a settling defendant’s payment of those same fees. We reasoned that 42 U.S.C. § 1988 allows “reasonable” fees and that a second payment for the same billable time is an unreasonable double recovery. 25 F.3d at 840. As Defendants contend, attorney fees are a component of costs under 42 U.S.C. § 1988. Marek v. Chesny, 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); Fulps v. City of Springfield, 715 F.2d 1088, 1092-93 (6th Cir.1983). Thus, double recovery of costs other than attorney fees is just as impermissible as double recovery of áttorney fees.
The district court’s reasoning that the deterrent principle at the heart of § 1983 allows double recovery of costs is unpersuasive. While the statute is designed to deter civil rights violations and encourage access to the courts to redress often economically unviable injuries to fundamental rights, see generally City of Riverside v. Rivera, 477 U.S. 561, 574-77, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), that basic principle does not require double reimbursement of identical litigation expenses. The statute does not specifically address this scenario, but it is difficult to imagine Congress intended for litigation expenses to be paid multiple times. Nor would eliminating duplicative payments for litigation expenses significantly influence counsel’s decision to prosecute civil rights suits. Costs are nearly always a smaller prize than fees (which also cannot be double-counted), and “almost always amount to less than the successful litigant’s total expenses in connection with a lawsuit.” 10 Wright & Miller, Federal Practice and Procedure § 2666. The decision to pursue a claim does not likely hinge on the prospect of recovering out-of-pocket expenses multiple times for the same litigation activities.
The principle of not allowing double recovery of costs under § 1988 is also supported by analogous California law. Under California law, when a pretrial settlement with one defendant covers the very same costs a plaintiff is trying to recover from the non-settling defendant, the plaintiff cannot recover the same costs twice. See Regan Roofing Co. v. Superior Court, 21 Cal.App.4th 1685, 27 Cal.Rptr.2d 62, 76 (1994). A California statute similarly provides that costs must be reasonable. Cal.Civ.Proc.Code § 1033.5(c)(2), (3); see also 7 Witkin, California Procedure § 118 at 657 (5th ed.2008).
Thus, whether this question is analyzed pursuant to federal common law or California law,[5] the district court erred by applying the incorrect legal standard. Accordingly, we remand for the district court to determine what amount of costs should be offset.
CONCLUSION
We affirm the attorney fees award because the district court’s finding that the Bravos achieved an excellent result is supported by the public benefit generated by the litigation as well as the $150,000 in damages the Bravos obtained in the Santa Barbara settlement. We reverse the dis- *669 triet court’s refusal to offset costs and remand for consideration of what amount of the costs award, if any, should be offset by the costs already paid by the City of Santa Barbara defendants.
AFFIRMED in part, REVERSED in part, and REMANDED for determination of costs. Each party shall bear its own costs on appeal.

. In a separate Memorandum filed contemporaneously, we address other issues presented in this appeal.

. A plaintiff who receives nominal damages is a prevailing party for § 1988(b) purposes. Benton v. Or. Student Assistance Comm’n, 421 F.3d 901, 904 (9th Cir.2005) (citing Farrar, 506 U.S. at 112, 113 S.Ct. 566).

. This determination is not unlike the determination whether defendants are jointly and severally liable for the plaintiff's injury. Cf. Hazle v. Crofoot, 727 F.3d 983, 995 (9th Cir.2013); see also The Atlas, 93 U.S. (3 Otto) 302, 306, 23 L.Ed. 863 (1876) ("The common law creates a joint and several liability ... because by a single and forcible act, which would not have happened except by the concurring negligence of the two parties, an injury has been done to an innocent party.”).

. See Gutierrez v. Vantia Properties, LLC, No. 1:13-CV-00642-LJO, 2014 WL 2106570, at *11 (E.D.Cal. May 20, 2014) (recommending that damages, attorney fees, and costs be offset by the amount paid by settling co-defendant); In re Vitamin C Antitrust Litig., 2013 WL 6858853, at *6 (E.D.N.Y. Dec. 30, 2013) (denying plaintiffs’ request for costs already paid by settling co-defendants, absent evidence from plaintiffs that the requested costs were different expenses).

. See Corder, 25 F.3d at 839-40 (noting courts’ disagreement over whether the offset of attorney fees under § 1988 is determined by federal common law or state law, and ultimately holding as a matter of law that an offset is required under § 1988); C.B. v. City of Sonora, 769 F.3d 1005, 1031 & n. 25 (9th Cir.2014) (noting that it is unclear whether federal or state law should apply, but addressing offset of damages in a § 1983 suit under state law).