**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BARRY A. HAZLE, JR.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>MITCH CROFOOT, Individually and as Parole Officer of the CDCR; BRENDA WILDING, Individually and as Unit Supervisor of the CA Dept. of Corrections; MATTHEW CATE, Individually and as Unit Supervisor of the CA Dept of Corrections; SCOTT KERNAN, Individually and as Chief Deputy Secretary of Adult Operations of the CA Dept. of Corrections and Rehabilitation; TIM HOFFMAN, Individually and as Director of the Division of Adult Parole Operations in California; DEPUTY JALLINGS, Individually and as Deputy Commissioner; WESTCARE, A Nevada Non-Profit Corporation,<br>*Defendants-Appellees*. | No. 11-15354<br><br>D.C. No.<br>2:08-cv-02295-<br>GEB-EFB<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., Senior District Judge, Presiding

Argued and Submitted
February 12, 2013—San Francisco, California

Filed August 23, 2013

Before: Dorothy W. Nelson, Stephen Reinhardt,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reinhardt

## SUMMARY[*]

### Civil Rights

The panel reversed the district court's denial of plaintiff's motion for a new trial in plaintiff's action, brought under 42 U.S.C. § 1983, alleging that his constitutional rights were violated when his parole was revoked after he refused to participate in a residential drug treatment program that required him to acknowledge a higher power.

The district judge, on summary judgment, had determined that the state defendants were liable for the deprivation of plaintiff's First Amendment rights, but the jury, which addressed only the issue of damages, awarded plaintiff zero damages. The panel first held that the district judge erred in concluding that plaintiff waived his challenge to the jury's verdict awarding him zero damages by failing to object at the time the jury was discharged.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district judge erred in refusing to hold that plaintiff was, as a matter of law, entitled to compensatory damages given the judge's undisputed finding that plaintiff's constitutional rights were violated. The panel applied the rule that the award of compensatory damages is mandatory when the existence of actual injury is beyond dispute. The panel therefore reversed the district court's denial of plaintiff's motion for a new trial.

The panel also held that the district judge erred in instructing the jury to determine whether liability should have been apportioned among the multiple defendants in this case and in dismissing certain other of plaintiff's claims, including the claims against defendant Westcare, a private entity that contracted with the California Department of Corrections and Rehabilitations as a regional Substance Abuse Services Coordination Agency. The panel remanded to the district court for, *inter alia*, a new trial against the state defendants on the issue of damages.

## COUNSEL

John G. Heller (argued) and Suhani Kamdar, Rogers Joseph O'Donnell, San Francisco, California; Carol D. Quackenbos, Brisbane, California; Philip A. Leider, Chapman Popik & White, LLP, San Francisco, California, for Plaintiff-Appellant.

Kamala D. Harris, Attorney General; Jonathan L. Wolff, Senior Assistant Attorney General; Thomas S. Patterson, Supervising Deputy Attorney General; Vickie P. Whitney (argued), Supervising Deputy Attorney General, Sacramento, California, for Defendants-Appellees Mitch Crofoot, Brenda

Wilding, Matthew Cate, Scott Kernan, Tim Hoffman, and Richard Jallins.

Mark G. Bonino (argued) and Miya R. Peard, Hayes, Scott, Bonino, Ellingson & McLay LLP, Redwood City, California; Wayne H. Maire, Maire & Burgess, Redding, California, for Defendant-Appellee Westcare California, Inc.

## OPINION

REINHARDT, Circuit Judge:

In 2007, citing "uncommonly well-settled case law," we held that the First Amendment is violated when the state coerces an individual to attend a religion-based drug or alcohol treatment program. *Inouye v. Kemna*, 504 F.3d 705, 712, 716 (9th Cir. 2007). Plaintiff Barry Hazle is an atheist who, over his numerous objections, was forced as a condition of parole to participate in a residential drug treatment program that required him to acknowledge a higher power. When Hazle refused, he was removed from the treatment program and arrested; his parole was revoked, and he was imprisoned for an additional 100 days.

Hazle subsequently filed this suit, seeking damages and injunctive relief for the deprivation of his First Amendment rights. The district judge held, consistent with the "uncommonly well-settled case law," that the state defendants in this case were liable for the violation that Hazle alleged—a finding that the state defendants do not appeal. Nevertheless, the jury, which addressed only the issue of damages, awarded Hazle zero damages for the violation of his constitutional rights.

We hold that the district judge erred in denying Hazle's motion for a new trial based on the jury's failure to award damages, and therefore reverse. We also hold that the district judge erred in instructing the jury to determine whether liability should have been apportioned among the multiple defendants in this case and in dismissing certain other of Hazle's claims. Accordingly, we remand to the district court for, *inter alia*, a new trial against the state defendants on the issue of damages.

## I. Background

### A. The Parties

Plaintiff Barry A. Hazle, Jr. is an atheist. As he put it at trial, "[T]hat simply means that you're not religious . . . . [T]hat means I don't believe in God . . . ." He testified that he is a member of several secular humanist organizations, including American Atheists. When asked about the role of atheism in his life, he testified, "I never really had any great reason to get religious or to believe in God. . . . I don't think it's my position or duty to look at what anybody else believes and try and . . . judge them because of it. . . . [M]y beliefs have nothing to do with [others'], and theirs have nothing to do with me. I just don't want them forced upon me."

Hazle's lawsuit names as defendants a number of state employees, sued both individually and in their official capacities. (We refer to them collectively as the "state defendants".) Defendant Mitch Crofoot was the parole agent assigned to Hazle during the events that form the basis of this suit. Hazle alleged that Crofoot threatened to revoke his parole and return him to prison when Hazle refused to participate in a religion-based drug treatment program, and

that he eventually fulfilled that threat by recommending that Hazle's parole be revoked and deciding (in conjunction with other defendants) that Hazle should be returned to prison.

Defendant Brenda Wilding was, during the relevant events, Crofoot's Unit Supervisor. Hazle alleges that Wilding approved and ratified Crofoot's decision to revoke his parole. Defendant Richard Jallins was the Associate Chief Deputy Commissioner with the California Department of Corrections and Rehabilitations (CDCR) Board of Parole Hearings. Hazle alleges that Jallins gave the final approval for the order revoking Hazle's parole and returning him to state prison.[1]

Defendant Westcare is a private entity that contracted with the CDCR as a regional Substance Abuse Services Coordination Agency (SASCA) in Hazle's region of California. As a SASCA, Westcare creates a network of treatment facilities for parolees with drug-related convictions and coordinates with the State to place parolees in these programs. Empire Recovery Center (not a defendant) is a not-for-profit recovery center in Redding, California, that contracts with Westcare to provide substance abuse treatment to parolees upon their release. Empire uses a 12-step recovery program, developed by Alcoholics Anonymous and Narcotics Anonymous, that includes references to "God" and to a "higher power." (Hereinafter, a 12-step program will always refer to a religion-based treatment program.) Hazle

---

[1] Hazle's lawsuit names two additional state defendants, Matthew Cate and Scott Kernan, the Secretary and Chief Deputy Secretary (respectively) of the CDCR's Division of Adult Parole Operations, whom he alleges are responsible for setting and enforcing policies relating to parole. Cate and Kernan are named as defendants only in Hazle's state law claim for injunctive relief.

alleges, *inter alia*, that Westcare referred him to Empire despite his request that he not be placed in a religion-based treatment program, and that Westcare has a policy of contracting only with religion-based treatment programs, thus rendering it unable to provide non-religious parolees with a secular treatment alternative.[2]

## B. Factual Background

In 2006 Hazle entered a no-contest plea on state law charges pertaining to possession of methamphetamine, and was placed on probation. When his probation was revoked, he was incarcerated as a civil addict from February 27, 2006, until February 26, 2007, at the California Rehabilitation Center (CRC), a state prison in Norco, California.[3] Hazle was released on parole on February 26, 2007, with the condition that he attend and complete a 90-day residential drug treatment program.

Prior to his release on parole, Hazle told correctional authorities and Westcare representatives that he was an atheist, and requested placement in a non-religious treatment program. A Westcare representative advised him that he should ask to be assigned to Empire, and Hazle was assigned to serve his residential treatment there. Upon arriving at

---

[2] Hazle alleges that Westcare was a state actor for the purposes of this lawsuit. As we discuss below, we do not resolve this contention.

[3] A California Court of Appeal later ruled that this first period of incarceration was improper. *See People v. Hazle*, 69 Cal. Rptr. 3d 16 (Cal. Ct. App. 2007). No party contends that this ruling affects Hazle's claims here.

Empire, Hazle quickly discovered that Empire uses a religion-based 12-step recovery program.

While at Empire, Hazle contacted Westcare representatives several times. He told them that he objected to the religious nature of the 12-step program and that he wished to be transferred to a secular program. When Hazle inquired whether a secular program existed, Westcare's representative informed him that the only alternative to Empire was a treatment facility whose program had an even greater focus on religion than Empire's. Hazle also contacted Crofoot, asking him whether he could fulfill his requirement through a secular program. Crofoot told Hazle that he needed to continue at Empire and participate in the 12-step program while Crofoot looked into the issue. Crofoot called Westcare, which informed him that it had no secular programs in Northern California. Crofoot subsequently informed Hazle that there were no available alternatives to the 12-step program he was in, but that, if he wanted to, he could file an Inmate/Parolee Appeal to petition for a change in the conditions of his parole. Crofoot again told Hazle that he should continue to participate in the treatment program, or else his parole would be revoked and he would be returned to prison.

On April 3, 2007, Hazle presented Crofoot with his appeal challenging the conditions of his parole, in which he stated his objection to participating in the faith-based program:

> As an Atheist, I object to forced participation in any spiritual/religious activities. . . . I have been told by my parole officer that I must complete the 90 days of spiritual treatment

because there are no available secular
recovery alternatives.

Since the CDC[R] cannot provide me with a
secular alternative to 12-step based treatment,
I would like the in-patient treatment
stipulation removed from my parole
conditions so that I may return home ASAP.

He attached a document explaining his beliefs, which
included a summary of numerous court opinions holding that
the Establishment Clause prohibits forcing nonreligious
individuals to participate in a 12-step program. Hazle's
attachment stated,

Let me begin by assuring you that my aim in
this endeavor is not to get out of having to
complete my Parole requirements. I have
committed myself to a full and lasting *secular*
recovery and complete abstinence from illegal
drugs.

According to Crofoot, on April 6, 2007, representatives of
Empire informed him that Hazle was being "disruptive,
though in a congenial way, to the staff as well as other
students." His demeanor was described as "sort of passive
aggressive." That same day, Crofoot spoke with his
supervisor, Brenda Wilding, and they concluded that the
proper course of action was to refer Hazle to the Board of
Parole Hearings for a parole violation, because he was
refusing to participate in the drug-treatment program that was
a condition of his parole. Both Crofoot and Wilding knew
that Hazle objected to participation in the Empire program

because he was an atheist. They decided to have Hazle returned to prison.

Later that day, Crofoot arrested Hazle, and placed him in Shasta County Jail. After Hazle's arrest, Crofoot called CRC (the state prison in Norco) and requested that Hazle be returned to their custody. Crofoot obtained an oral order of return authorized by Deputy Commissioner Richard Jallins. Hazle was subsequently incarcerated for over 100 additional days, most of which he spent at the state prison in Norco.

While in prison, Hazle received a response regarding his parolee appeal, stating that the Civil Addict Program required that he complete an inpatient program. It also stated:

> It would behoove you to take advantage of the tools that are offered to you to help you with your addiction, behavior, and adjustment to society.
>
> Per your Agent of Record, Mr. Crofoot, he has made attempts to locate treatment facilities to accommodate your preference, per Mr. Crofoot, Empire Recovery was the best suited for you. Your negative behavior toward staff caused you to be discharged from that program leaving your Agent of Record no other choice but to return you to CRC for further treatment.
>
> Therefore, your request is denied.

Subsequent to Hazle's filing his complaint, the CDCR issued a directive in response to our decision in *Inouye v.*

*Kemna*, 504 F.3d 705 (9th Cir. 2007), stating that parolees could not be compelled to attend a religion-based program if they refuse to participate in such a program for religious reasons. The directive requires that such parolees instead "be referred to an alternative nonreligious program."

## C. Procedural History

Hazle filed a complaint seeking damages and injunctive relief and alleging two causes of action: a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights, and a taxpayer injunction claim under California state law. Specifically, the complaint alleged that Hazle's rights under the First Amendment's Establishment Clause were violated when (1) he was required to participate in a 12-step program as a condition of his parole, (2) his requests to fulfill parole through a secular program were rejected, and (3) his parole was revoked, and he was incarcerated, when he refused to participate in the 12-step program. Hazle sought compensatory damages—both for emotional distress and for his loss of liberty in having been reincarcerated—as well as punitive damages.

Hazle subsequently moved for partial summary judgment against the state defendants (Crofoot, Wilding, and Jallins), seeking to establish their liability on his section 1983 claim for "violat[ing] [his] rights under the Establishment Clause . . . by requiring him . . . to continue participating in a '12-step' drug rehabilitation program that contained religious components." The district judge granted Hazle's motion. Notably, the district judge rejected the state's argument that it was Hazle's own behavior that had resulted in his being removed from the Empire program, concluding that "[t]his argument rings hollow in light of the undisputed facts

showing that Plaintiff was only 'disruptive' in the program 'in a congenial way.'"

In the same order, the district judge granted summary judgment in favor of Westcare on Hazle's section 1983 claim against it. The district judge held that Hazle had not established the necessary causal connection between Westcare's actions and the violation of his rights, and therefore could not prevail on this claim. The district judge did not address the issue of whether Westcare was a state actor for purposes of section 1983 liability.

The district judge also granted both Westcare and the state defendants summary judgment on Hazle's state law claim for injunctive relief, holding that this claim was moot in light of the state's directive requiring that individuals who object to religion-based treatment programs be placed in non-religious programs.

The court held a two-day jury trial on the issue of damages. Prior to the opening statements, the jury was read a number of stipulated facts, including facts regarding the condition of California prisons. The district judge also gave the jury notice of his prior finding regarding the liability of the state defendants. At trial, the state defendants in Hazle's section 1983 claim—Crofoot, Wilding, and Jallins—all testified, as did Hazle himself. On the second day of trial, after closing arguments, the jury was charged.

The parties had submitted proposed jury instructions and verdict forms following a pre-trial conference. Before the jury was charged, the parties and the district judge extensively discussed the jury instructions and verdict form. Because the state defendants had testified at trial that they did

not have the authority to change Hazle's conditions of parole, the district judge began to inquire about the liability of state employees other than the state defendants named in this case. He eventually gave jury instructions and approved a jury verdict form that adopted defendants' proposal that the jury decide whether defendants were jointly and severally liable, or whether damages should be apportioned among the defendants (and, if the latter, instructing the jury to apportion damages).

The day after it was charged, the jury delivered a note to the district judge requesting "[v]erification of the Court's determination of a guilty verdict having been rendered against the Defendants for violation of the Plaintiff's constitutional rights." The jury further expressed its confusion regarding "whether the Defendants are the *only* parties who have been found in violation of the Plaintiff's rights." After extended argument, the district judge gave a supplemental instruction to the jury noting that defendants "are the only state employees who have been sued for damages and have been found liable."

Later that day, the jury returned a verdict finding that the defendants were not jointly and severally liable for either the emotional distress damages or the loss of liberty damages, and awarding Hazle zero damages from every defendant as to both sets of damages (both emotional distress and loss of liberty). Judgment was entered "in accordance with the jury verdict."

Hazle filed a timely motion for a new trial under Federal Rule of Civil Procedure 59(a). The motion contended, *inter alia*, that the jury erred in awarding zero damages, in that the jury's failure to award compensatory—or at least

nominal—damages on his loss of liberty claim was contrary to law and the weight of the evidence.[4]  The district judge denied Hazle's motion for a new trial on two independent grounds.  First, he ruled that Hazle had waived any objection to the verdict by failing to object before the jury was discharged.  Second, he concluded, citing the jury's finding that damages could be apportioned among the defendants, that the jury's verdict was consistent with "the jury . . . not find[ing] any defendant was a cause of any of Hazle's injuries."  We have jurisdiction over Hazle's timely filed appeal pursuant to 28 U.S.C. § 1291.

## D.  Standard of Review

We review *de novo* the district judge's decision to grant summary judgment to determine whether there are any genuine issues of material fact and whether the district judge correctly applied the substantive law.  *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004).  We also review de novo whether a jury instruction misstates the law.  *See Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 784 (9th Cir. 2006).  We review for abuse of discretion the district judge's decision to deny a motion for a new trial.  *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009).  In such review, "we first look to whether the trial court identified and applied the correct legal rule to the relief requested.  Second, we look to whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or

---

[4] Hazle also contended that defendants' testimony at trial regarding their alleged lack of authority to change the terms and conditions of Hazle's parole was false.  As we describe below, we do not reach this issue.

without support in inferences that may be drawn from the facts in the record." *Id.*

## II.  Hazle's Motion for a New Trial

We first address Hazle's motion for a new trial based on the jury's failure to award him damages for his loss of liberty. We hold, as a matter of law, that Hazle was entitled to compensatory damages from the state defendants for his unlawful term of imprisonment.  We therefore reverse the denial of a new trial, and remand on the issue of damages.

## A.

As an initial matter, we hold that the district judge erred in concluding that Hazle waived his challenge to the jury's verdict awarding him zero damages by failing to object at the time the jury was discharged.  The state defendants argue, citing our decision in *Philippine Nat'l Oil Co. v. Garrett Corp.*, that a party must object to a jury's zero-damages verdict "when the verdict [is] read," or else waive any objection to the verdict.  724 F.2d 803, 806 (9th Cir. 1984). Our decision in *Kode v. Carlson*, however, clarified that the rule in *Philippine National* applies only in those circumstances in which the verdict is "internally inconsistent"—as when, for example, the jury decides *both* the issues of liability *and* damages, and does so inconsistently.  596 F.3d 608, 611 (9th Cir. 2010).  As we held in *Kode*, when a jury addresses *solely* the issue of damages, there is no duty to object that the verdict is inconsistent with a finding of liability before the jury is discharged.  The jury's verdict in such a case is not inconsistent with another of its conclusions. *Id.*  It is, at most, inconsistent with an extrinsic legal conclusion made by

another (here, the district judge). *Id*. The state defendants offer no reason why *Kode* should not govern this case, and we accordingly reverse the district judge's determination that Hazle waived his objection to the jury's zero-damages verdict.**[5]**

### B.

We now turn to the question raised by Hazle's new-trial motion: whether Hazle is entitled to compensatory damages from the state defendants.**[6]** We hold that he is. The district

---

**[5]** The state defendants also urge that Hazle waived his challenge to the jury's zero-damages verdict when he stipulated that "the parties have not agreed to or stipulated to either the existence or the extent of any emotional distress related injuries suffered by Mr. Hazle" and that the issue was a question of fact for the jury. This contention is frivolous. The stipulation says nothing about Hazle's entitlement to damages arising from his loss of liberty, which are distinct from emotional distress damages, and which are the only type of compensatory damages that he contends the jury was required to award as a matter of law.

**[6]** Contrary to the state defendants' contentions, it should have been obvious that Hazle was entitled to at least an award of nominal damages as a result of the district judge's finding that the state defendants violated his constitutional rights. The Supreme Court has explicitly held that when a defendant is found to have violated an individual's right to procedural due process, the plaintiff is "entitled to recover nominal damages," even "without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978). Our circuit's case law makes clear that "neither the judge nor the jury has any discretion in this matter," and that the rule entitling a plaintiff to nominal damages applies with equal force to violations of substantive constitutional rights. *Floyd v. Laws*, 929 F.2d 1390, 1402 (9th Cir. 1991); *see also Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794–95 (9th Cir. 2002). Nominal damages must be awarded in cases in which the plaintiff is not entitled to compensatory damages, such as cases in which no actual injury is incurred or can be proven. Here, however, there was actual

judge's finding of liability establishes that Hazle suffered actual injury when he was unconstitutionally incarcerated. Given this undisputed finding that Hazle's constitutional rights were violated, and applying the rule that the award of compensatory damages is mandatory when the existence of actual injury is beyond dispute, we hold that the district judge erred in refusing to hold that Hazle was, as a matter of law, entitled to compensatory damages. We therefore reverse the district judge's denial of Hazle's motion for a new trial.

The Supreme Court has held that entitlement to compensatory damages in a civil rights action is not a matter of discretion: "Compensatory damages . . . are mandatory; once liability is found, the jury is *required* to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." *Smith v. Wade*, 461 U.S. 30, 52 (1983) (emphasis added). Consistent with *Smith*, when a plaintiff has indisputably suffered an actual injury in a case such as this, an award of compensatory damages is mandatory. The state defendants suggest that we are bound to affirm the district judge's decision under cases such as *Philippine National*, in which we addressed the conflict between a jury's simultaneous finding of liability and its decision to award no damages, and held that the "failure to award damages does not by itself render a verdict invalid." *See* 724 F.2d at 806; *see also, e.g.*, *Guy v. City of San Diego*, 608 F.3d 582, 588 (9th Cir. 2010) (affirming an award of only nominal damages). In the cases in which we have upheld zero-damages verdicts, however, we have explicitly noted that the facts of those cases lent themselves to the conclusion that no actual injury had been suffered by the plaintiff. *See*

injury and thus Hazle was entitled to compensatory damages. *See* discussion section II.B, *infra*.

*Guy*, 608 F.3d at 588 (noting that the jury could have discredited the plaintiff's testimony of injury, given that it had discredited some of his other testimony); *Wilks v. Reyes*, 5 F.3d 412, 415 (9th Cir. 1993) (reasoning that the jury reasonably "did not believe Wilks suffered injury"); *Philippine Nat'l*, 724 F.2d at 806 ("[T]he evidence about the damages that PNOC sustained from [defendant's] misrepresentations was in conflict. The jury could have found that PNOC sustained no damage from any misrepresentations."). We are aware of no cases in which we have affirmed a zero-damages verdict when, as here, the existence of actual injury was indisputable.

In this case, the fact that state defendants' unconstitutional conduct caused Hazle to suffer actual injury—namely, being imprisoned in violation of his First Amendment rights—was established as a matter of law. The district judge found that the state defendants were liable for the constitutional violations in his grant of partial summary judgment. As the district judge explained to the jury, "I decided in a pretrial ruling that each defendant violated plaintiff's First Amendment Establishment Clause right by . . . *arresting and incarcerating plaintiff because of [his] failure to participate in the program*" (emphasis added). Further, the parties stipulated, in facts read to the jury, that Hazle's period of reincarceration lasted from April 2007 until July 2007. Thus, it is not the failure to award damages, "by itself," that renders the jury's verdict invalid. *Philippine Nat'l*, 724 F.2d at 806. What renders the jury's decision invalid is its decision to award zero damages in light of proof of actual injury: Hazle's unlawful imprisonment because of his exercise of his First Amendment rights.

We are not alone in so concluding. As the Second Circuit has held, "where the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some [actual] injury to plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004). *Kerman* involved a plaintiff whose Fourth Amendment rights were violated when he was handcuffed and detained for psychiatric evaluation. The Second Circuit held that its rule regarding compensatory damages applied with particular force to claims for loss of liberty, noting that "where the plaintiff was indisputably deprived of his liberty" and the underlying conduct is unlawful, the plaintiff is entitled to "compensatory, not merely nominal, damages." *Id.* The court stated that such treatment was consistent with the traditional common-law principles governing entitlement to damages for the tort of false imprisonment. *Id.* at 125.

The Second Circuit's holding is consistent with decisions by other circuits rejecting awards of merely nominal damages for unlawful conduct resulting in the loss of liberty. The Eleventh Circuit, for example, rejected an award of merely nominal damages to a juvenile who was unlawfully placed in solitary confinement, and held that the plaintiff was entitled to compensatory damages. *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1087–88 (11th Cir. 1986). The Eighth Circuit held that a $1 award was "patently insufficient to compensate [a plaintiff] for the injury he suffered by being placed in segregation in retaliation for exercising a constitutional right." *Trobaugh v. Hall*, 176 F.3d 1087, 1088–89 (8th Cir. 1999). The court instead remanded for an award of damages for each day that the plaintiff spent in administrative segregation. *Id.* at 1089. Here, Hazle is entitled to an award of compensatory damages for each day that he spent in prison

as a result of the violation of his constitutional rights by the state defendants.

The jury's verdict, which awarded Hazle no compensatory damages at all for his loss of liberty, cannot be upheld. Given the indisputable fact of actual injury resulting from Hazle's unconstitutional imprisonment, and the district judge's finding that the state defendants were liable for that injury, an award of compensatory damages was mandatory. The jury simply was not entitled to refuse to award any damages for Hazle's undisputable—and undisputed—loss of liberty, and its verdict to the contrary must be rejected.

## C.

The jury's verdict is no less invalid simply because there were additional persons who were potentially liable for Hazle's injuries, but who were not before the court. The state defendants suggest that the jury's verdict may be explained as reflecting its allocation of liability to potential defendants not named in the complaint. In denying Hazle's motion for a new trial, the district judge rationalized the jury's zero-damages verdict in this manner, noting that the jury "likely concluded that no defendant was a cause of any injury Hazle received or suffered as a result of his Establishment Clause claim." The district judge went on to identify at least one absent party that he presumably concluded had caused Hazle's injuries, noting, "it is undisputed that the Board of Prison Hearings ordered Hazle to participate in the Empire program."

We reject this contention by the state defendants, as well as the judge's speculation. To the extent that the jury's verdict attempted to apportion all liability for Hazle's injuries

to absent parties, it acted contrary to the district judge's order finding the state defendants liable. A finding of liability in a civil rights action—such as the one the district judge entered against the state defendants—requires, as a matter of law, that the defendant be the "proximate cause of the section 1983 injury." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). Thus, the district judge's finding of liability—which he left undisturbed and is not challenged on appeal—establishes as a matter of law that the state defendants in the trial caused Hazle's constitutional injury when they incarcerated him for exercising his First Amendment rights. Indeed, the district judge stated as much—that the actions of the state defendants had caused Hazle's imprisonment—when, in his order granting Hazle's motion for partial summary judgment, he concluded that they were "liable for violating [Hazle's] Establishment Clause rights by . . . 'arresting and incarcerating him based on his resistance'" to participation "in a '12-step' program that contained religious components." This finding of liability is based on ample support in the record.[7] To the extent that any of the state defendants wished to contest whether they were the "proximate cause" of Hazle's alleged injuries, they had ample opportunity to raise that contention in response to his motion for summary judgment. They did not do so then and do not do so now. As a result, the district judge's finding is now the law of the case. *See United States v. Alexander*,

---

[7] Crofoot, Hazle's parole officer, along with his supervisor, Wilding, made the decision to report Hazle for a parole violation when he refused to participate in the religion-based treatment program, and decided to have him returned to prison. Jallins ratified their recommendation to return Hazle to prison for the violation of his parole by actually issuing the order to do so.

106 F.3d 874, 876 (9th Cir. 1997).**[8]**   The district judge's liability finding, as well as the resultant instruction, simply left no room for the jury to infer that all of Hazle's damages had been caused by persons other than the state defendants.

In any event, the state defendants' explanation of the jury's zero-damages award as allocating all of Hazle's injury to absent persons reflects the erroneous view that not only could zero damages be awarded to Hazle, but that Hazle's damages were capable of apportionment.   Hazle independently challenges the jury instruction and verdict form that allowed the jury to decide this question, contending that the district judge should have concluded, as a matter of law, that Hazle was entitled to compensatory damages and that defendants were jointly and severally liable for his injuries.**[9]**   He is correct.   The district judge erred in putting the

---

**[8]** When, at trial, the state defendants argued that they might move to reconsider the order granting Hazle summary judgment, the district judge expressed surprise that they would wait until after a jury had been empaneled and read an instruction regarding liability.   Ultimately, however, the state defendants never moved for reconsideration of the district judge's ruling and they do not now appeal the district judge's summary judgment order.

The state defendants *did* raise in response to the motion for summary judgment an entirely *separate* issue related to causation.   Specifically, they argued that Hazle had been removed from parole not because of his refusal to participate in the program, but because he was disruptive.   The district judge rejected this contention, and the state defendants neither moved to reconsider the district judge's grant of summary judgment nor filed an appeal challenging that holding.

**[9]** We reject the state defendants' numerous contentions of waiver as to this issue.   The state defendants err in contending that Hazle was required to object to this instruction or verdict form when the district judge presented a draft of the instructions and verdict form to the parties; Hazle

question of apportionment to the jury in the first place, because the question of whether an injury is capable of apportionment is a legal one to be decided by the judge, not the jury. *See United States v. Burlington N. & Santa Fe Ry. Co.*, 520 F.3d 918, 942 (9th Cir. 2007), *rev'd on other grounds*, 556 U.S. 599 (2009). Further, Hazle's injury from his term of unlawful imprisonment—as well as any resultant emotional distress—was clearly indivisible, in that the concurrent actions of all defendants were necessary in order to return Hazle to prison. *See Rudelson v. United States*, 602 F.2d 1326, 1332 (9th Cir. 1979) (an injury is indivisible when, "[h]ad any one of the defendants exercised due care, none of the injuries would have occurred"); *see also The Atlas*, 93 U.S. (3 Otto) 302, 306 (1876) ("The common law creates a joint and several liability . . . because by a single and forcible act, which would not have happened except by the concurring negligence of the two parties, an injury has been done to an innocent party."). Defendants Crofoot and Wilding, two of the three defendants named in this claim, together decided to report Hazle for a parole violation because he failed to participate in the 12-step program, as well as to return him to prison. Defendant Jallins, the third

---

had adequately informed the court of his position numerous times (both in his proposed jury instructions and verdict form and in three pre-trial briefs), and the district judge stated at trial that he was aware of Hazle's request that the jury be instructed that there was joint and several liability. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1326–27 (9th Cir. 1993) (requiring no "futile formal objection" when written submissions made the trial judge "fully aware" of the party's objection). Further, we reject the state defendants' argument that Hazle explicitly waived this issue during a hearing as a misreading of the record. Finally, we reject the state defendants' argument that Hazle was required to assert the error arising from the jury verdict and instructions in his motion for a new trial. *See United States v. Hayashi*, 282 F.2d 599, 601 (9th Cir. 1960).

defendant, ratified their decision by issuing the order to return Hazle to prison. Had any one of them not acted, Hazle would not have been incarcerated.[10] Thus, the jury verdict cannot be upheld as apportioning liability to individuals not before it because the jury should not have been asked to apportion liability at all.

Thus we must reject the jury verdict as simply inconsistent with the district judge's order holding defendants liable for Hazle's false imprisonment. We therefore reverse the district judge's determination that Hazle was not entitled to a new trial for an award of compensatory damages for his loss of liberty.[11]

---

[10] We also reject the suggestion by the state defendants that the language of the jury instructions permitted the jury to second-guess the district judge's finding that the state defendants had caused Hazle's injuries because they asked the jury to identify the amount of damages "caused" by the defendants. The instructions simply limited the damages for which the state defendants were responsible to those that could reasonably be attributed to them individually—a seemingly necessary limitation in every damages instruction, unless there is joint and several liability.

[11] Because we reject the jury instruction and verdict form permitting the jury to apportion liability—an error that also affected the jury's decision to award zero damages on Hazle's emotional distress claim—we remand for a new trial as to those damages as well. Further, because the jury failed to award compensatory or even nominal damages, it was necessarily unable to award punitive damages. We therefore remand for reconsideration of Hazle's entitlement to punitive damages. We reiterate that Hazle does not assert that the jury was required, as a matter of law, to award either type of damages on the emotional distress claim, and, as a result, we do not reach that question here.

### III.  Summary Judgment as to Westcare

We now turn to Hazle's constitutional claim against Westcare.  The district judge granted summary judgment to Westcare on the ground that Hazle had failed to introduce any facts tending to support the conclusion that Westcare was a proximate cause of his injuries, holding that Hazle "cannot establish a causal connection between Westcare's alleged acts and the violation of [Plaintiff's] rights."  We hold that, when the facts are taken in the light most favorable to Hazle, a genuine issue of material fact exists as to whether Westcare's actions causally contributed to the violation of Hazle's constitutional rights.  We thus reverse the grant of summary judgment in Westcare's favor with regard to Hazle's section 1983 claim.

One of Hazle's allegations was that he suffered harm as a result of Westcare's unconstitutional conduct in "requiring him . . . to participate in a '12-step' program that contains substantial religious components."  Further, Hazle alleged that this constitutional violation occurred, at least in part, because Westcare had a policy or custom of "failing to provide [parolees] with secular or non-religious alternatives for post-release treatment."  This is the manner in which, according to the record, Westcare contributed to the violation of Hazle's constitutional rights.  It is undisputed that Westcare was the regional Substance Abuse Services Coordination Agency in the relevant part of California, and that, in that capacity, Westcare "contracts with the State of California to create a network of treatment facilities for parolees with drug-related convictions, and coordinates with the State to place parolees in these programs."  Westcare concedes that it does not have in its network any facilities that provide non-religious treatment options; rather, Westcare

admits that it "continues to contract solely with residential providers that use the 12-step program 'in some form or fashion.'"

We think it obvious that a foreseeable result of Westcare's actions in providing only religion-based programs for parolees is that some California prisoners will be required to submit to religious treatment programs despite their objections. Our case law requires no more to establish proximate causation. In *Crowe v. Cnty. of San Diego*, for example, we found police officers to be the proximate cause of a *Miranda* violation, even though they did not commit the ultimate act that completed the constitutional violation. 608 F.3d 406, 430–31 (9th Cir. 2010). We held that liability for a constitutional violation requires only that the defendant "'set[] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* at 430 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).

Our conclusion is buttressed by our 2007 holding in *Inouye*, in which we concluded that a parolee's right to be free from coerced participation in a religious treatment program was a matter of "uncommonly well-settled case law" that was "enough for us to hold that the law was clearly established, sufficient to give notice to a reasonable parole officer, in 2001." 504 F.3d at 716. *Inouye* leaves little room for Westcare to argue that constitutional injuries of the sort suffered by Hazle were not a foreseeable result of its actions.

Westcare suggests that, standing alone, its failure to provide Hazle a non-religious alternative was not sufficient to hold it liable for violating his constitutional rights. It

argues that it had no part in the decision to assign Hazle to a Westcare facility—the decision that, Westcare contends, was the *true* cause of Hazle's constitutional violation. To the extent that Westcare suggests that the state should have known and accommodated the fact that all of Westcare's treatment facilities would violate the First Amendment rights of non-religious parolees, we are doubtful that such an argument may serve as a defense to liability, particularly given Westcare's special role as the state-contracted Substance Abuse Services Coordination Agency for the region involved. It appears from the record that there were no other entities that provided the service that Westcare did in the region of California that it served under its contract with the state. It also appears that state officials were not free, either before or after Hazle arrived at one of the facilities in Westcare's network, to place him in a treatment facility outside Westcare's network. Westcare itself concedes that it "coordinates with the State to place parolees in" the Westcare network of treatment programs, all of which are religion based. We thus find that Hazle has, at least, created a genuine issue of material fact as to whether Westcare's policy of contracting solely with religious facilities was a proximate cause of his constitutional injuries.[12]

---

[12] Westcare in fact "acknowledges its obligation to ensure that the residential facilities it contracts with do not require [parolee] participants to attend religious events or participate in religious events." Indeed, its standard contract specifically forbids the treatment facilities it contracts with from requiring parolees to "attend religious events or participate in religious activities." The actual cause of Westcare's potential constitutional violation appears to be its too-narrow construction of the word "religious," in that it "interprets the word 'religious' in its contractual provision to mean 'attending church or prayer services' and does not consider the 12-step process to be 'religious.'" We cannot explain its continued adherence to this position in light of our decision in

In any event, Hazle has grounds other than Westcare's policy of contracting exclusively with religious facilities that create a triable issue of fact regarding whether Westcare caused his constitutional injury. Viewed in the light most favorable to Hazle, Westcare was intimately involved in the process that led Hazle to be placed in a religion-based facility. A declaration provided by Hazle describes Westcare's involvement in selecting a treatment facility for him: "Prior to my release on parole, I had notified correctional authorities and representatives of Westcare California, Inc. ("Westcare") of my Atheism, and requested placement in a treatment facility that did not contain religious components. In response, a Westcare representative told me I should ask to be assigned to Empire." This is consistent with Westcare's own admissions, which suggest that it has a significant role in determining the treatment facility to which parolees will be assigned. Westcare stated that it "finds available programs that meet the parolee's parole term conditions and relays such information to the transitional coordinator inside the prison." It further stated that "if the parolee does not already have a specific provider request, Westcare will provide the name(s) of available providers to the transitional coordinator to relay to the parolee. In the case of CDCR Norco, [the prison in which Hazle was incarcerated,] Westcare coordinators discuss available treatment facilities with transitional coordinators who work for Mental Health Systems, Inc., within the prison." Westcare's own records regarding Hazle confirm that he met with a Westcare representative numerous times before he was

_____

*Inouye* that "reverence for 'a higher power' is a substantial component of the AA/NA program" and that forced participation in such 12-step programs "strikes at the core of the Establishment Clause of the First Amendment." 504 F.3d at 712.

released from prison and specifically "discussed aftercare and relapse prevention." Thus, Westcare's suggestion that it had no part in forming the conditions of Hazle's parole is contradicted by the record, which, viewed in the light most favorable to Hazle, supports an inference that Westcare was responsible for Hazle's being referred to the religious treatment facility where his First Amendment rights were violated.

We thus find that, when the evidence is taken in the light most favorable to Hazle, a genuine issue of material fact exists as to whether Westcare's actions constituted a proximate cause of the violation of Hazle's constitutional rights when it (1) contracted only with treatment facilities offering solely religious based programs or services, and (2) counseled and arranged for Hazle to attend a religion-based facility as a part of his state-imposed parole program, despite having been informed that he was an atheist and that he objected to such religious programming. We accordingly reverse the district judge's grant of summary judgment to Westcare, and remand for further proceedings.[13]

## IV. Hazle's Claim for Injunctive Relief

Finally, we address Hazle's claim for injunctive relief under California Civil Procedure Code § 526a. That statute provides a cause of action to taxpayers to enjoin any state agency or a local government entity from carrying on any

---

[13] Because the question whether Westcare, given its role as the Substance Abuse Services Coordination Agency, is a state actor for purposes of section 1983 liability is not before us, we decline to provide a definitive answer in the first instance on the basis of the limited record before us. We remand for a determination on a more complete record.

unlawful actions. *See Cates v. Cal. Gambling Control Comm'n*, 65 Cal. Rptr. 3d 513, 518 (Cal. Ct. App. 2007). In his claim for injunctive relief, Hazle alleged, consistent with the allegations in his § 1983 claims, that the state defendants in their official capacities, including the Secretary of the CDCR, continue to violate the First Amendment by requiring parolees to participate in religious treatment programs in order to be eligible for parole, failing to provide parolees with secular or non-religious treatment alternatives, and revoking the parole of those who protest or resist participation in religion-based treatment programs. Hazle sought an injunction under the statute preventing both Westcare and the aforementioned state defendants from expending state funds in this unconstitutional manner.

The district judge held that Hazle's state law claim for injunctive relief was moot in light of developments that followed our 2007 decision in *Inouye*. Specifically, in November 2008, and in a direct response to *Inouye*, the state CDCR issued a directive stating that parole agents "shall not require that a parolee attend AA, NA, or any other religious based program if the parolee refuses to participate in such a program for religious reasons." The directive required that an objecting parolee instead "be referred to an alternative nonreligious program." The district judge concluded that, "absent any indication that [this directive] was promulgated only in response to ongoing litigation," it was "sufficient to render the request for an injunction moot," and therefore granted summary judgment to all defendants on that claim.

The district judge erred in concluding that Hazle's state law claim for injunctive relief was moot. We do not mean to cast doubt on our prior holding that a defendant may overcome the "heavy burden of proving that the challenged

conduct cannot reasonably be expected to recur" with an official "memorandum represent[ing] a permanent change" in policy that is "broad in scope and unequivocal in tone" and "fully supportive" of the relevant constitutional rights. *White v. Lee*, 227 F.3d 1214, 1243–44 (9th Cir. 2000). Here, however, there is undisputed evidence that the CDCR directive has not been implemented in any meaningful fashion, at least with respect to Westcare.[14] The record discloses that defendant Westcare conceded the following facts:

> 38. Westcare did not receive a copy of [the CDCR] directive until it was produced in discovery in this action.

> 39. Westcare does not know what the term "alternative nonreligious program" as used in the Directive means.

> 40. The Directive has not altered the way in which Westcare conducts business.

> 41. To date, Westcare continues to contract solely with residential providers that use the 12-step program "in some form or fashion."

Further, Westcare's Senior Vice President provided a declaration, issued fully a year after the CDCR's directive,

---

[14] Because the district judge granted summary judgment on this claim to the state defendants "for the reasons stated in the Court's [prior] order granting partial summary judgment in favor of Westcare," our decision as to Westcare's motion for summary judgment is equally applicable to both sets of defendants.

stating, "[t]here is no requirement by CDCR, that I am aware of, that requires Westcare to contract with a certain minimum number of non-religious or non-'12-step' treatment programs." These facts establish that, notwithstanding the state's directive, the defendants do not appear to have taken any concrete steps to prevent other parolees from suffering the same constitutional violations Hazle suffered. Under these circumstances, it is far from "'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,'" as is required to demonstrate that a case has been mooted by a defendant's voluntary conduct. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). Accordingly, we reverse the district judge's entry of summary judgment to defendants, and remand for further consideration of Hazle's claim for injunctive relief.**[15]**

## V. Conclusion

For the reasons stated above, we hold that the jury verdict awarding Hazle no compensatory damages is contrary to law, reverse the district judge's denial of Hazle's motion for a new trial, and remand for a new trial as to his loss of liberty

---

**[15]** We reject the state defendants' arguments that we should affirm the district judge's grant of summary judgment on an alternative basis—namely, that Hazle lacks statutory standing as a taxpayer. The district judge did not address this basis for the state defendants' summary judgment motion, and the parties—then operating under the district judge's already-dispositive ruling, in response to Westcare's motion, that this claim was moot—understandably did not develop a record upon which to decide it. We decline to do so in the first instance. *See S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 345 (9th Cir. 1996).

damages. The jury shall be instructed that liability is joint and several and that Hazle is entitled to compensatory damages. We also hold that Hazle is entitled to a new trial as to his emotional distress damages as a result of the district judge's erroneous jury instruction and verdict form.

In addition, we reverse the district judge's grant of summary judgment to Westcare on Hazle's section 1983 claim, as well as its holding that Hazle's state law claim for injunctive relief was moot. We remand both of these issues for further consideration.[16]

**REVERSED AND REMANDED.**

---

[16] Given our disposition, we need not reach the other issues Hazle raises on appeal, including his alternative ground for a new trial motion, or his assertion that the district judge gave an improper supplemental jury instruction.