SMITH, Circuit Judge,
dissenting.
I respectfully dissent. I would affirm the district court’s dismissal of Jackson’s complaint because Jackson has failed to state a First Amendment claim where (1) participation in the OUTP was not mandatory, and (2) he was never punished, threatened with punishment, or otherwise subjected to a significant penalty after withdrawing from the OUTP.
I. Background
Jackson filed suit under 42 U.S.C. § 1983 against several state defendants, alleging the violation of his First Amendment rights because the substance abuse treatment program, in which Jackson agreed to participate, contained religious elements. His pro se complaint provides, in relevant part:
While in the Dep’t of Corr’s I was stipulated by the Board of Probation and Parole to a substance abuse treatment program (program). The program had required meetings invoking] religious tenets by using the serenity prayer and religious meditations. I am an Atheist and in being so these religious elements upset and offended me and my beliefs. My efforts to resolve these issues included discussions with my primary counsel- or Ms Miller, her assistant Ms Reynolds and the Director of the ... program Ms Salsbury. Their partisan advice was to “act as if’ the Therapeutic Community (TC) handbook defines this as: “to assume a role or attitude even if you don’t feel like it. A tool used to assist one in “trying one” new patterns of thought and behavior” page 19 (Kansas City Community Center’s, 180 Day Therapeutic] Community Substance Abuse Treatment Programs Resident Handbook) (revised January 2006)[.] They also suggested that I use God as an acronym for “good orderly direction.” Neither seemed viable to me. I sent a kite ... to the Institutional Parole Officer Mr Blane asking to discuss sending a letter to the parole board concerning these r[e]ligious issues. Four days later the kite was returned with a flat refusal, would not even talk to me about it. I met the caseworker Ms Tyler, I explained my situation I then requested an Informal Resolution Request (IRR). Later I filed that IRR with her Asst. Mr Furg[enson]. It is my assertion that I was being coerced by and through an atmosphere designed and intended to change or alter my thinking and behavior. That it would induce conformity by adding pressure and leverage through the hope and desire of achieving a “Placement on Parole.” Due to the religious components of the program and lack of any foreseeable remedy, my choices were to withdraw from the program or remain exposed to those religious elements. I came to a point where I was no longer willing to be subjected to this form of coercion and allow the inculcation of religious theology, all in the guise of a benefit. For me to remain in that program would have been the equivalent to denouncing my beliefs and my right to them!
In a “Time Line Reference Sheet” attached as an exhibit to his complaint, Jackson stated that after being “[screened for treatment,” he received a “decision from the parole board, stipulated to treatment at Western Diagnostic Correctional Center (WRDCC).” Jackson does not explain the circumstances surrounding his “stipulation” to treatment; however, the defendants’ counsel confirmed that this treatment was not required by his sentence. *547 Jackson’s counsel also conceded that participation in the OUTP is not required.[3]
Also included with his complaint was a document from the MDOC Board of Probation and Parole (“MDOC document”), which provided that Jackson was “scheduled for release from confinement on 1/20/2008.” The document explained that Jackson’s “time credit release consideration has been denied.” It also stated that because Jackson failed to “complete[] a Board stipulated treatment program, the Board is denying [Jackson’s] credit release date.” As a result, Jackson’s “previously scheduled release date ... remained] in effect.”[4]
II. Discussion
Jackson argues, among other things, that the district court erroneously dismissed his complaint for failure to state a claim because he has “sufficiently alleged that he was faced with an unlawful Hob-son’s choice: embrace the program’s religious elements or be denied an opportunity for early release on parole.” According to Jackson, precedent from our sister circuits holds that this “choice is a violation of the Establishment Clause because it amounts to coercion to embrace religious notions.”
The only apposite case from this circuit concerning a prisoner’s purported coercion to participate in a faith-based program and recite the “serenity prayer” is Munson v. Norris. See Munson v. Norris, 67 Fed.Appx. 388 (8th Cir.2003) (unpublished per curiam) (“Munson I ”); Munson v. Norris, 435 F.3d 877 (8th Cir.2006) (per curiam) (“Munson II”); Munson v. Norris, 375 Fed.Appx. 638 (8th Cir.2010) (unpublished per-curiam) (“Munson III”). That case arose
from an ADC parole condition which required Munson to attend a treatment program, the Reduction of Sexual Victimization Program (“RSVP”), for inmates who exhibited sexual deviancy. The RSVP included weekly meetings that followed “The Twelve Steps of Alcoholics Anonymous Adapted for Sexual Addicts” in their discussions. While enrolled in the RSVP, Munson refused to recite the serenity prayer at the conclusion of the group meetings. Munson was eventually terminated from the program and filed suit, alleging, among other claims, a violation of the Establishment Clause.
In Munson II we remanded, holding that the district court had “wrongly ana *548 lyzed the First Amendment claim under the Free Exercise Clause instead of the Establishment Clause” and instructing the district court to “decide whether requiring Mr. Munson at the RSVP meetings to recite the serenity prayer was in violation of the Establishment Clause.” 435 F.3d at 880-81 (citing Warner v. Orange County Dep’t of Prob., 115 F.3d 1068, 1074-76 (2d Cir.1996); Kerr v. Farrey, 95 F.3d 472, 476-80 (7th Cir.1996); Griffin v. Coughlin, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98, 101-05 (1996)).
On remand, the district court instructed the jury to find that Munson had been coerced to recite the serenity prayer, in violation of Munson’s Establishment Clause rights, if the following was proven by a preponderance of the evidence: (1) the ADC required RSVP participants to recite the serenity prayer; (2) the ADC required Munson to recite the serenity prayer; (3) the ADC punished or threatened to punish Munson for refusing to recite the serenity prayer; and (4) Munson was damaged as a result. Munson’s counsel did not object to these instructions, proffer any additional instructions, or argue that the district court had not complied with our mandate in Munson II.
Munson III, 375 Fed.Appx. at 639-40 (emphasis added).
In Munson III, this court applied plain error review and concluded that, “[r]e-garding the first three elements of the district court’s instruction, ... the district court adequately complied with our mandate because determinations concerning whether (1) Munson and other RSVP participants were actually required to recite the prayer and (2) Munson was punished for refusing to recite the prayer, were necessary to the question of whether Mun-son’s Establishment Clause rights were violated.” Id. at 641 (citing Lee, 505 U.S. at 587, 112 S.Ct. 2649 (“It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise.... ”); Kerr, 95 F.3d at 479 (finding coercion when inmates were “required” to attend a treatment program and were “subject[ed] to significant penalties” upon refusal)).
In Munson II, in remanding to the district court for an analysis of Munson’s claim under the Establishment Clause, we relied on three cases: Warner, Kerr, and Griffin. 435 F.3d at 880-81 (citing Warner, 115 F.3d at 1074-76; Kerr, 95 F.3d at 476-80; Griffin, 649 N.Y.S.2d 903, 673 N.E.2d at 101-05).
In Warner, a special condition of Warner’s probation was to “ ‘attend Alcoholics Anonymous [A.A.] at the direction of [his] probation officer.’ ” 115 F.3d at 1070 (second alteration in original). At the direction of his probation officer, Warner attended A.A. meetings. Id. Warner complained to his probation officer “that, as an atheist, he found the religious nature of the A.A. meetings objectionable.” Id. Nevertheless, “[t]he probation officer instructed Warner to continue his attendance.” Id. A few months later, the probation officer “determined that Warner lacked sufficient commitment to the program; he directed Warner to attend ‘Step meetings’ and to seek another more advanced A.A. member as a ‘sponsor’ to give him guidance and encourage his adherence to the program.” Id. “[T]he program Warner was required to attend involved a substantial religious component.” Id. (emphasis added). Following a bench trial, the district court concluded that “compelling Warner to attend the program violated the Establishment Clause.” Id.
On appeal, the Second Circuit held that “forcing Warner to attend Alcoholics *549 Anonymous ... violate[s] the First Amendment’s Establishment Clause.” Id. at 1074. Based on the record, “no doubt” existed that “Warner was coerced into participating in these religious exercises by virtue of his probation sentence. Neither the probation recommendation, nor the court’s sentence, offered Warner any choice among therapy programs.” Id. (emphasis added). Instead, “[ojnce sentenced, Warner had little choice but to attend the A.A. sessions. If Warner had failed to attend A.A., he would have been subject to imprisonment for violation of probation.” Id. (emphases added). The Warner court relied on Griffin and Kerr in reaching its decision, stating:
In circumstances similar to our case, the New York Court of Appeals recently reached the same conclusion. Griffin v. Coughlin, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996), cert. denied, 619 U.S. 1054, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997). In Griffin, the New York court held that a prisoner’s family visiting privileges may not be conditioned on participation in a treatment program that adopts the “religious oriented practices and precepts of Alcoholics Anonymous.” Id. at 904, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98. The court emphasized that it was not proscribing A.A. programs offered to prisoners on a voluntary basis. Id. at 915, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98. It was the coercive circumstances, conditioning a desirable privilege on the prisoner’s participation in a religious program, without alternative, that drove the New York court to find a violation of the Establishment Clause. Similarly, the Seventh Circuit has ruled recently that where inmates were required to attend a substance abuse program with explicit religious content on pain of being rated a higher security risk and suffering adverse parole effects, the state impermissibly coerced participation in a religious program in violation of the Establishment Clause. Kerr v. Farrey, 95 F.3d 472 (7th Cir.1996) (“[I]n general, a coercion-based claim indisputably raises an Establishment Clause question.” Id. at 479).
Id. (emphases added); see also Kerr, 95 F.3d at 479 (“On the record as it comes to us, it is also undisputed that Kerr was subject to significant penalties if he refused to attend the NA meetings: classification to a higher security risk category and adverse notations in his prison record that could affect his chances for parole.”).
In addition to Warner, Griffin, and Kerr, the Ninth Circuit has held that “requiring a parolee to attend religion-based treatment programs violates the First Amendment.” Inouye, 504 F.3d at 712. In Inouye, “Inouye charge[d] that ... his parole officer ... violated the Establishment Clause by requiring Inouye to attend Alcoholics Anonymous/Narcotics Anonymous (‘AA/NA’) meetings as a condition of his parole.” Id. at 709 (emphasis added). “Inouye’s conditions of parole gave [his parole officer] authority to order him into a drug treatment program. The conditions emphasized that ‘[f]ailure to participate in your treatment and abide by the rules of the program may be considered evidence that you are refusing to participate in the program.’ ” Id. at 710 (second alteration in original) (emphasis added). Ultimately, the probation officer ordered Inouye to participate in the program. Id. Although Inouye remained in the program for a few months, he “refused to participate and was terminated.” Id. As a result of the termination, the parole officer issued a warrant for Inouye’s arrest for violating the conditions of his parole. Id. The state court revoked Inouye’s parole. Id.
*550 The district court granted summary-judgment to the parole officer based on qualified immunity. Id. The Ninth Circuit reversed, finding it “essentially uncontested that requiring a parolee to attend religion-based treatment programs violates the First Amendment.” Id. at 712. The court adopted Kerds reasoning to determine “whether there was governmental coercion of religious activity.” Id. at 713. “Kerr proceeded sequentially as follows: ‘first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious rather than secular?’ ” Id. (quoting Kerr, 95 F.3d at 479). In Inouye, the court found that the parole officer acted in his official state capacity and ordered participation. Id. The court also found that “the action was clearly coercive: Inouye could be imprisoned if he did not attend and he was, in fact, ultimately returned to prison in part because of his refusal to participate in the program.” Id. (emphasis added). Finally, neither party disputed that the program was “substantially based in religion.” Id. The court determined that “attendance in [the AA] program may not be coerced by the state. The Hobson’s choice [the parole officer] offered Inouye — to be imprisoned or to renounce his own religious beliefs— offends the core of Establishment Clause jurisprudence.” Id. at 714 (emphasis added); see also Hazle v. Crofoot, 727 F.3d 983, 986 (9th Cir.2013) (remanding to the district court for a new trial on the issue of damages where the plaintiff, an atheist, “was forced as a condition of parole to participate in a residential drug treatment program that required him to acknowledge a higher power”).
The allegations set forth in Jackson’s complaint differ markedly from the aforementioned cases and show, as a matter of law, that the coercion element is lacking. See Kerr, 95 F.3d at 479. First, Jackson has not shown that his participation in the OUTP was mandatory. See Warner, 115 F.3d at 1070 (stating that the prisoner “was required to attend” meetings under his sentence); Kerr, 95 F.3d at 479 (involving inmates required to attend a substance abuse program); Griffin, 649 N.Y.S.2d 903, 673 N.E.2d at 110 (indicating that the court was not proscribing A.A. programs available to prisoners on a voluntary basis); Inouye, 504 F.3d at 712 (requiring prisoner to attend A.A. meetings “as a condition of his parole”). Jackson’s counsel conceded at oral argument that participation in the OUTP is not required. Furthermore, the defendants’ counsel confirmed that Jackson’s participation in the OUTP was not required by his sentence.[5]
Second, Jackson has not shown that he suffered a punishment, threat of punishment, or significant penalty upon his with *551 drawal from the program. See Munson III, 375 Fed.Appx. at 641 (“Regarding ... the district court’s instruction, we conclude that the district court adequately complied with our mandate because [a] determination[ ] concerning whether ... Munson was punished for refusing to recite the prayer ... [was] necessary to the question of whether Munson’s Establishment Clause rights were violated.”); Kerr, 95 F.3d at 479 (“On the record as it comes to us, it is also undisputed that Kerr was subject to significant penalties if he refused to attend the NA meetings: classification to a higher security risk category and adverse notations in his prison record that could affect his chances for parole.”).
As to the OUTP that Jackson participated in, Missouri law provides, in relevant part:
This program shall be used as an intermediate sanction by the department. The program may include education, treatment and rehabilitation programs. If an offender successfully completes the institutional phase of the program, the department shall notify the board of probation and parole within thirty days of completion. Upon notification from the department that the offender has successfully completed the program, the board of probation and parole may at its discretion release the offender on parole as authorized in subsection 1 of section 217.690.
Mo. Rev. Stats. § 217.364, subsection 4 (emphasis added). In turn, subsection 1 of Missouri Revised Statutes § 217.690 provides:
When in its opinion there is reasonable probability that an offender of a correctional center can be released without detriment to the community or to himself, the board may in its discretion release or parole such person except as otherwise prohibited by law. All paroles shall issue upon order of the board, duly adopted.
(Emphasis added.) “Nothing contained in [§ 217.690] shall be construed to require the release of an offender on parole nor to reduce the sentence of an offender heretofore committed.” Id. § 217.690, subsection 10 (emphasis added).
“There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.” Greenholtz, 442 U.S. at 7, 99 S.Ct. 2100 (1979). “This is because the conviction has extinguished any liberty interest in release until the sentence has been served.” Gettings v. Mo. Dep’t of Corrs., 950 S.W.2d 7, 8 (Mo.Ct.App.1997) (citing Greenholtz, 442 U.S. at 7, 99 S.Ct. 2100). Nevertheless, “[s]tate statutes and regulations governing parole can create a constitutionally protected liberty interest in parole ... if they specifically mandate that parole must be granted when certain criteria are met.” Id. at 9 (emphasis added) (citations omitted). “Where the relevant statutes and regulations do not create mandatory criteria for parole but instead leave the question of parole to the discretion of the parole board, then the prisoner has no liberty or due process right to parole just because nonmandatory guidelines have been met.” Id. (citation omitted).
The Missouri Court of Appeals has “specifically found that [§ 217.690.1] does place the parole decision in the wide discretion of the Board.” Id. (citation omitted). It has also concluded that “[t]he regulations do not entitle a prisoner to release simply because the prisoner completes the program” and that a program graduate is “not entitle[d] ... to release at a specific time. The standards for release are those set out in the statute, and even then release is firmly committed to the Board’s discretion.” Wheat v. Mo. Bd. of Probation & *552 Parole, 932 S.W.2d 835, 839 (Mo.Ct.App.1996).
Thus, even if Jackson had completed the OUTP, Missouri law never guaranteed him early release; at best, he was receiving only a possibility of early release under the OUTP. Moreover, he suffered no punishment, threat of punishment, or significant penalty following his withdrawal from the OUTP, and the possibility of early release via other avenues still remains. At oral argument, when asked whether Jackson “would have still been able to seek parole” without participating in the OUTP, Jackson’s counsel responded, “Correct, Your Honor,” provided that Jackson was otherwise qualified. Jackson’s counsel was again asked whether Jackson would “have a chance for early release” if he did not complete the OUTP, to which counsel replied, “There may be a basis, as any other inmate would have, provided that ... the terms of his incarceration would allow for early release on parole.” Jackson never alleged in his complaint that all avenues to early release are now foreclosed since his withdrawal from the OUTP.
Having to pursue another avenue for the possibility of early release is not a punishment or significant penalty. It is drastically different from subjecting an individual to imprisonment as a violation of probation for not attending meetings, Warner, 115 F.3d at 1074; Inouye, 504 F.3d at 713, or classifying an inmate to a higher security risk category or placing adverse notations in his prisoner record that could affect his parole eligibility, Kerr, 95 F.3d at 479. Thus the removal of Jackson’s possibility of early release via this one avenue-the OUTP-is not “clearly coercive.” Inouye, 504 F.3d at 713.[6]
III. Conclusion
Accordingly, I would affirm the judgment of the district court.

. At oral argument, Jackson’s counsel was asked whether "participation in the program is required.” Counsel replied, "No, it’s not. It’s not required.” And, when the defendants' counsel was asked whether participating in the program was "a condition ... [that was] a part of [Jackson’s] sentence,” the defendants’ counsel replied:
No, it was not. He had a four-year sentence, and he had to serve four years. He had the opportunity to get out early ... for good behavior and all the other ways that inmates can potentially be paroled early. This was yet another avenue in which the parole board might exercise discretion.

. At oral argument, the defendants' counsel was asked whether there are "other avenues for early release,” aside from the OUTP program, to which counsel replied:
There are. Particularly, I think it's called good times credits ... for every day that you go without an infraction in the prison you get a day off of your sentence, depending on what the sentence is. Some sentences you are required to spend at least 40 percent of the sentence in prison. More serious offenses you have to spend at least 85 percent. I believe these were ones he had to spend at least 40 percent. And that’s where ... that conditional release date ... in January 2008 comes in. That’s ... less than his four years that he was sentenced to serve. That’s wh[en] he could get out if he had good behavior the entire time.

. The "Time Line Reference Sheet” provides that Jackson received a “decision from the parole board, stipulated to treatment at Western Diagnostic Correctional Center (WRDCC).” Likewise, the MDOC document stated that the Board was denying Jackson's credit release date because Jackson failed to "complete[] a Board stipulated treatment program.” Jackson’s complaint does not discuss the circumstances surrounding this "stipulation.” But the plain meaning of the word "stipulate” indicates that Jackson agreed to entering the OUTP. "Stipulate” means to "lay down as a condition of an agreement; [to] require by contract; ... to specify or arrange an agreement ... to guarantee or promise (something) in an agreement.” The American Heritage Dictionary 1767 (3rd ed.1992). The legal term "stipulation” is defined as "[a] material condition or requirement in an agreement ... [a] voluntary agreement between opposing parties concerning some relevant point.” Black’s Law Dictionary 1550 (9th ed.2009). And, as explained supra, Jackson’s counsel conceded that participation in the program is not mandatory.

. Because I conclude that Jackson’s complaint fails to state a First Amendment claim, I do not reach whether Jackson adequately pleaded that Crawford, Salsbury, and Burgess — government officials — violated his constitutional rights. See Majority Opinion, Part II.B., supra.